FILED

2013 Mar-01  PM 04:25
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

| | | |
|---|---|---|
| APRIL K. BARNETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **Civil Action No.** |
| | ) | **1:12-cv-01745-VEH** |
| JP MORGAN CHASE BANK, | ) | |
| NATIONAL ASSOCIATION, as | ) | |
| successor by merger to | ) | |
| CHASE HOME FINANCE, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S BRIEF IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

Attorneys for Defendant,
JPMorgan Chase Bank, N.A.,
as the successor by merger to
Chase Home Finance LLC:

**SANDY G. ROBINSON**
CABANISS, JOHNSTON, GARDNER,
 DUMAS & O'NEAL LLP
Post Office Box 2906
Mobile, Alabama  36652
Telephone:     (251) 415-7300
Facsimile:     (251) 415-7350
E-Mail:        sgr@cabaniss.com

**MICHAEL E. TURNER**
**JASON W. BOBO**
CABANISS, JOHNSTON, GARDNER,
 DUMAS & O'NEAL LLP
2001 Park Place North, Suite 700
Birmingham, Alabama  35203
Telephone:     (205) 716-5200
Facsimile:     (205) 716-5389
E-Mail:        met@cabaniss.com
               jwb@cabaniss.com

## **TABLE OF CONTENTS**

I.   NARRATIVE STATEMENT OF UNDISPUTED MATERIAL FACTS ........................ 1

II.  ARGUMENT ...................................................................................................... 6

    A.   Damages claimed based on reporting to credit agencies are preempted ................ 6

    B.   Plaintiff cannot seek damages for her miscarriage due to lack of
        causation evidence ................................................................................... 14

    C.   The remaining specific causes of action asserted by Plaintiff fail ....................... 16

        1.   Fraud ................................................................................................ 16

        2.   Fraudulent Suppression ...................................................................... 20

        3.   Conversion ........................................................................................ 22

        4.   Breach of Contract ............................................................................ 22

        5.   Wrongful Foreclosure ........................................................................ 23

        6.   Third-Party Beneficiary Claim ........................................................... 24

        7. and 8.   Negligence and Wantonness .................................................. 25

        9.   Negligent or Wanton Supervision, Retention, Hiring, or Training .............. 26

        10.   Unjust Enrichment ........................................................................... 27

        11.   Violation of TILA ............................................................................ 28

        12.   Violation of RESPA ........................................................................ 29

III.  CONCLUSION .................................................................................................. 30

CERTIFICATE OF SERVICE ......................................................................................... 32

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| APRIL K. BARNETT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action No. |
| ) | 1:12-cv-01745-VEH |
| JP MORGAN CHASE BANK, ) | |
| NATIONAL ASSOCIATION, as ) | |
| successor by merger to ) | |
| CHASE HOME FINANCE, LLC, ) | |
| ) | |
| Defendant. ) | |

## DEFENDANT'S BRIEF IN SUPPORT OF ITS
## MOTION FOR PARTIAL SUMMARY JUDGMENT

COMES NOW defendant JPMorgan Chase Bank, N.A., the successor by merger to Chase Home Finance, LLC ("Chase"), and submits the following Brief in support of its Motion for Partial Summary Judgment in the above-styled action pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## I. NARRATIVE STATEMENT OF UNDISPUTED MATERIAL FACTS[1]

1.    Plaintiff executed a Note on May 15, 2007 in favor of ERA Mortgage in the original amount of $308,000.00.  (Plaintiff's Deposition ("P. Tr.") at Exh. 1 (CHASE 00017-00019); Complaint (Doc. 1-1) at ¶ 7).

---

[1]    The facts will be cited in the Argument section herein by number as follows: "SoF [number]".

2.      The Note obligated Plaintiff to make a monthly payment of principal and interest beginning on July 1, 2007, with a maturity date of June 1, 2037.  (P. Tr. at Exh. 1 (CHASE 00017); (Doc. 1-1 at ¶ 7).

3.      The Note provided that Plaintiff's failure to make a monthly payment by the date it was due would constitute default.  (Id. at CHASE 00018).

4.      The Note was secured by a May 15, 2007 Mortgage executed by Plaintiff in favor of Mortgage Electronic Registration Systems, Inc. ("MERS"), acting solely as nominee for ERA Mortgage, on property owned by Plaintiff located at 101 Karian Court, Oxford, Alabama 36203 (hereinafter, the "Property"). (Id. at CHASE 00001-00016; Doc. 1-1 at ¶ 7).

5.      Plaintiff was obligated by the Mortgage to "pay when due the principal of, and interest on, the debt evidenced by the Note...."  (P. Tr. at Exh. 1 (CHASE 00003)).

6.      "In the event of a loss," the Mortgage provided that, "Unless Lender and Borrower otherwise agree in writing, any insurance proceeds ... shall be applied to restoration or repair of the Property."  (Id. at CHASE 00006; Lanier Jeffrey Depo. ("Jeffrey Tr.") at pp. 169-71 and 229-32).

7.      Federal National Mortgage Association ("Fannie Mae") became the investor of Plaintiff's mortgage loan on May 29, 2007.  (Defendant's Discovery Responses[2] at pp. 4-5).

8.      Chase began servicing the Mortgage on November 13, 2007.  (Id. at pp. 4-5).

9.      As part of the servicing transfer, Chase received physical possession of the Note, which was endorsed in blank.  (Id. at pp. 4-5; P. Tr. at Exh. 1 (CHASE 00019)).

10.     Chase remained in possession of the Note until it was paid off on January 27, 2011.  (Chase's Discovery Responses, at pp. 4-5).

11.     On June 14, 2010, Plaintiff's home on the Property was completely destroyed by an electrical fire.  (Doc. 1-1 at ¶ 10).

12.     Plaintiff made her monthly mortgage payment in June of 2010.  (Id. at ¶ 10).

13.     Plaintiff did not make her mortgage payments due in July and August of 2010.  (Plaintiff's Tr. at p. 159 and Exh. 19; Jeffrey Tr. at pp. 340-41).

14.     On August 24, 2010, Chase provided Plaintiff with a pay-off quote on the mortgage loan in the amount of $301,608.58, good through September 3, 2010. (Doc. 1-1 at ¶ 15; P. Tr. at pp. 42-45 and Exh. 3).

---

[2]      Chase's August 17, 2012 Objections, Answers, and Responses to Plaintiff's First Interrogatories and Request for Production of Documents.

15.     On August 31, 2010, Plaintiff's insurance carrier, State Farm, mailed a check to Chase in the amount of $301,608.58.  (Doc. 1-1 at ¶ 18; P. Tr. at Exh. 4).

16.     The insurance proceeds check was deposited by Chase on September 13, 2010 to a restricted escrow account, which was tied to Plaintiff's loan.  (Chase's Discovery Responses, at pp. 2-3).

17.     Chase did not receive any interest or other income from the insurance funds.  (Id. at pp. 2-3).

18.     Chase did not receive written authorization from Plaintiff to apply the insurance proceeds to pay off the loan until November 9, 2010.  (Id. at p. 2).

19.     Fannie Mae declined to accept the $301,608.58 as satisfaction of Plaintiff's loan because by the time Plaintiff's letter of authorization was received, the insurance funds were insufficient to pay the full amount owed on the loan. (Chase's Discovery Responses, at p. 2; Jeffrey Tr. at pp. 330-31. 334, and Exh. 5 (CHASE 00404)).

20.     Fannie Mae instructed Chase to inform Plaintiff about the possibility of consenting to a deed-in-lieu of foreclosure.  (Chase's Discovery Responses, at p. 2; Jeffrey Tr. at pp. 330-31, 334, and Exh. 2 (CHASE 00403-04)).

21.     Chase drafted and sent December 16, 2010 letter to Plaintiff, pursuant to Fannie Mae's instructions, informing her of the deed-in-lieu alternative. (Chase's Discovery Responses, at p. 2; P. Tr. at Exh. 6; Doc. 1-1 at ¶ 32).

22.     Plaintiff's attorney sent a January 13, 2011 letter to Chase requesting that the insurance proceeds be applied to pay off the loan.  (Doc. 1-1 at ¶ 42).

23.     On January 27, 2011, Chase applied the insurance proceeds to pay off the loan, charging off the shortage owed at that time.   (Jeffrey Tr. at pp. 331-32Exh. 1; Doc. 1-1 at ¶ 43)

24.     On January 28, 2011, Lanier Jeffrey at Chase mailed Plaintiff a letter confirming that the insurance proceeds had been applied to pay off the loan in full. (Jeffrey Tr. at Exh. 7; P. Tr. at Exh. 8; Doc. 1-1 at ¶ 43)

25.     Chase recorded a Corporate Cancellation with respect to Plaintiff's mortgage loan on February 16, 2011.  (P. Tr. at Exh. 5; Doc. 1-1 at ¶ 44).

26.     No foreclosure sale occurred with respect to the Property or the Mortgage. (P. Tr. at pp. 100).

27.     After Plaintiff made her loan payment in June of 2010, no other money was sent to Chase by or on behalf of Plaintiff other than the State Farm insurance proceeds. (P. Tr. at pp. 159-60).

28.     Plaintiff had two miscarriages before her first child was born, in February of 2007 and May of 2008. (P. Tr. at pp. 86-87).

29.     Plaintiff became pregnant in late November of 2010, and was approximately three weeks pregnant on December 16, 2010. (P. Tr. at pp. 88-91).

30.     Plaintiff had a miscarriage on December 18, 2010. (Doc. 1-1 at ¶ 37).

31.   Plaintiff became pregnant again on or about December 22, 2010.  (P. Tr. at pp. 94-96).

32.   Plaintiff's pregnancy which began on or about December 22, 2010, was uncomplicated and resulted in the birth of a healthy baby girl in September of 2010.  (P. Tr. at pp. 96-97 and 118-19).

## II. <u>ARGUMENT</u>

Chase first addresses herein claims for damages that are not recoverable due to federal preemption or lack of competent evidence.  Chase then addresses the legal deficiencies in each of Plaintiff's causes of action.[3]  As set out below, Chase is entitled to summary judgment in its favor as to all claims and damages asserted by Plaintiff, with the single exception of damages, if any, claimed under RESPA for the 60-day period following Chase's receipt of a "qualified written request."

**A.**   <u>**Damages claimed based on reporting to credit agencies are preempted:**</u>

All state law causes of action or related damages or injury to Plaintiff and her credit allegedly arising from Chase's credit reporting on her home mortgage

---

[3]   "Summary judgment should be entered against a party who fails to make a showing sufficient to establish the existence of an essential element of its case, and on which it bears the burden of proof at trial."  <u>Galloway v. Aletheia House</u>, 2013 WL 597783, at *1 (11th Cir. 2013) (citations omitted).  "Once the movant satisfies his initial burden under Rule 56(a), the nonmoving party 'must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial.' and '[a] mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party.'"  <u>Forester v. Bank of America, N.A.</u>, 2012 WL 3206471, at *3 (S.D.Ala. 2012) (citations omitted).

loan are due to be dismissed because they are preempted by the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.* Plaintiff has not asserted a claim under the FCRA, but she seeks damages in a numerous counts based on Chase's credit reporting, conduct regulated by the FCRA.

For example, Plaintiff alleges that on or about February 17, 2011, LSI withdrew an offer for a home mortgage loan because of a "foreclosure" mentioned on her credit report, (See Doc. 1-1 at ¶¶ 46-48), and she "then determined Chase had falsely reported to credit reporting agencies that her Mortgage was or had been in foreclosure"[4] (Id. at ¶ 48). Plaintiff also alleges that on or about March 14, 2011, she was denied a Lowe's credit card due to a "foreclosure" allegedly having been reported by Chase. (Id. at ¶ 52). And, she generally alleges that she has been unable to obtain "an affordable mortgage loan" due to Chase's credit reporting. (Id. at ¶ 51). Each of these allegations of damage and injury to Plaintiff's credit history or ability to obtain credit is incorporated by reference into all of her thirteen (13) causes of action and her demand for damages from Chase on each.[5]

Plaintiff further asserts she has suffered "financial hardship, damages to her credit standing, monetary damages" (paragraphs 62 and 69) and "financial

---

[4]   Plaintiff goes on to allege that LSI offered (but she did not accept) to make her the mortgage loan after the "foreclosure" referenced on her credit was removed, but at a higher interest rate of 6.8%, which would have increased the cost of the loan over its 30-year life to "roughly" $300 each month, or a total of $108,000. (Doc. 1-1 at ¶¶ 49-50).

[5]   See Doc. 1-1 at ¶¶ 56, 63, 70, 75, 80, 85, 91, 94, 97, 103, 107, 109, and 114.

hardship" and damages to "her credit standing and ability to secure a mortgage loan at a reasonable rate of interest" (paragraph 84) allegedly flowing from Chase's credit reporting.   Finally, Plaintiff asserts a cause of action (Thirteen) for Libel/Slander/Defamation due to Chase's allegedly having "reported negative credit information to credit reporting agencies concerning the Plaintiff with knowledge that said information was incorrect and false...." (Doc. 1-1 at ¶ 115).

Congress enacted the FCRA "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." Safeco Ins. Co. of Ant. v. Burr, 551 U.S. 47 (2007).   FCRA was amended in 1996 to impose duties upon persons, such as Chase, who furnish information to credit reporting agencies. See Lofton-Taylor v. Verizon Wireless, 2006 WL 3333759, at *4 (S.D.Ala. 2006), aff'd, 262 Fed.Appx. 999 (11th Cir. 2008).

Section 1681s-2 (15 U.S.C. § 1681s-2) sets forth the "[r]esponsibilities of furnishers of information to consumer reporting agencies," in two specific respects. Section 1681s-2(a) prohibits a person from "furnish[ing] any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate."[6] There is no private right of action available to consumers for violations of Section 1681s–2(a). See 15

---

[6]      A person who regularly reports information to consumer reporting agencies is also required to give notice to the credit reporting agencies of any incorrect or incomplete information and information disputed by the consumer. 15 U.S.C. § 1681s–2(a)(2), (3).

U.S.C. § 1681s–2(c)(1); Gorman v. Wolpof & Abramson, LLP, 584 F.3d 1147, 1154 (9th Cir.2009) ("Duties imposed on furnishers under subsection (a) are enforceable only by federal or state agencies.").[7]

The FCRA does provides a private right of action for negligent or willful noncompliance (See 15 U.S.C. § 1681n, o) with Section 1681s–2(b), which requires "that a furnisher conduct a reasonable investigation of a consumer dispute" and "requires a creditor, upon receiving notice of [a] dispute, to both report the results of the investigation and, if the investigation finds that the information is incomplete or inaccurate, report those results to the [credit reporting agencies]." This provision is not implicated in this case. There is no allegation (or evidence) that Chase received notice of a dispute pursuant to Section 1681i(a)(2).

In summary, Plaintiff is without a cause of action under the FCRA, but she claims that Chase is liable to her under Alabama state common law causes of action for its allegedly inaccurate furnishing of information to credit reporting agencies. These activities are specifically governed and regulated by Section 1681s-2(a) of the FCRA, however, and, therefore, Plaintiff's claims and requests for damages from Chase's conduct in this area are preempted.

The FCRA contains three preemption provisions. The first is a general preemption, Section 1681t(a), which provides that the FCRA does not preempt

---

[7]     See also Riley v. General Motors Acceptance Corp., 226 F.Supp.2d 1316, 1319 (S.D.Ala. 2002).

state law except to the extent it is inconsistent with the FCRA.   A second preemption provision is found at Section 1681h(e), which provides in relevant part:

> [N]o consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to sections 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against who the user has taken adverse action, based in whole or part on the report, except as to false information furnished with malice or willful intent to injure such consumer.

The plain language of Section 1681h(e) provides broad preemption, excepting only certain limited situations, none of which are implicated in this case.[8]

In 1996, when it amended FCRA to add Section 1681s-2, Congress added a third preemption provision at Section 1681t(b)(1)(F), which states in relevant part:

> [n]o requirement or prohibition may be imposed under the laws of any State ... with respect to any subject matter regulated under ... section 1681s–2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies .....

Under this provision, *any* state law relating to the furnishing of credit information to a credit reporting agency (conduct regulated by Section 1681s-2) is preempted.

Following the 1996 amendments, the federal courts were left to reconcile the preemption provisions of Section 1681h(e) and Section 1681t(b)(1)(F).   Because

---

[8]   Sections 1681g, 1681h, and 1681m all govern disclosures made *to* consumers. The former provisions require credit reporting agencies to disclose information to a consumer at his or her request.   The latter provision requires users of credit reporting information taking adverse action against a consumer to disclose information to that consumer.

Section 1681h(e) appears to permit certain state common law tort claims, but Section 1681t(b)(1)(F) appears to preempt both statutory and common law claims, there has not been a uniform approach to this issue, even within the same Circuit.

The Eleventh Circuit has not directly addressed the question.[9]  However, two Circuit Courts, the Seventh and the Second, have recently addressed it and ruled in favor of the "total preemption" approach, concluding that Section 1681t(b)(1)(F) preempts the entire field "of state statutory and common law causes of action insofar as they are predicated on conduct that arises out of reports furnished to credit agencies."  See Subhani v. JPMorgan Chase Bank, National Association, 2012 WL 1980416, at *3 (N.D.Cal. 2012) (citations omitted).  Chase submits that this Court should adopt the conclusions of those Circuit Courts (discussed herein), as well as District Courts within Alabama reaching similar conclusions, as the clearest and most well-reasoned approach to this question.

In Purcell v. Bank of America, 659 F.3d 622 (7th Cir. 2011), the Seventh Circuit addressed this question over state law claims of defamation, invasion of privacy, and negligence over allegedly inaccurate credit reporting.[10]  In a well-

---

[9]     See Lofton-Taylor, 262 Fed.Appx. at 1002-03 (after concluding that the statement at issue was not false and there no evidence that it was made maliciously with intent to injure, the Court concluded that the state law defamation and invasion of privacy claims were precluded by Section 1681h(e) and commented:  "As a result, we need not decide whether the preemption language in § 1681t(b)(1)(F) is broad enough to also preclude her claims.").

[10]     The Seventh Circuit first addressed and rejected the District Court's reasoning that "laws" only applied to state statutory, but not common law, claims.  659 F.3d at 633-34.

reasoned opinion, the Court concluded there was no conflict between Sections 1681h(e) and 1681t(b)(1)(F), and that the latter provision preempts all state statutory and common law claims arising out of reports to credit agencies:

> [W]e do not perceive any inconsistency between the two statutes. Section 1681h(e) preempts some state claims that could arise out of reports to credit agencies; § 1681t(b)(1)(F) preempts more of these claims.   Section 1681h(e) does not create a *right* to recover for wilfully false reports; it just says that a particular paragraph does not preempt claims of that stripe.  Section 1681h(e) was enacted in 1970. Twenty-six years later, in 1996, Congress added § 1681t(b)(1)(F) to the United States Code.  The same legislation also added § 1681s–2. **The extra federal remedy in § 1681s–2 was accompanied by extra preemption in § 1681t(b)(1)(F), in order to implement the new plan under which reporting to credit agencies would be supervised by state and federal administrative agencies rather than judges.  Reading the earlier statute, § 1681h(e), to defeat the later enacted system in § 1681s–2 and § 1681t(b)(1)(F), would contradict fundamental norms of statutory interpretation.**[11]

659 F.3d at 625 (italics in original, bolding supplied).

Accordingly, the Court remanded the case with instructions to enter judgment for the bank on all of the plaintiff's claims, "state and federal alike". 659 F.3d at 626.

---

[11]     The Court further explained:

Our point is not that § 1681t(b)(1)(F) repeals § 1681h(e) by implication.  It is that the statutes are compatible:   the first-enacted statute preempts some state regulation of reports to credit agencies, and the second-enacted statute preempts more.  There is no more conflict between these laws than there would be between a 1970 statute setting a speed limit of 60 for all roads in national parks and a 1996 statute setting  a speed limit of 55.  It is easy to comply with both:  don't drive more than 55 miles per hour.  Just as the later statute lowers the speed limit without repealing the first … so § 1681t(b)(1)(F) reduces the scope of state legislation without repealing any other law.

659 F.3d at 625.

In <u>Macpherson v. JPMorgan Chase Bank, N.A.</u>, 665 F.3d 45 (2nd Cir. 2011), the Second Circuit adopted the Purcell Court's reasoning to preempt state law claims of defamation and intentional infliction of emotional distress arising out of allegedly willfully and maliciously providing false information to a credit reporting agency. The Court rejected the plaintiff's argument that the claims were saved from preemption by Section 1681h(e), describing the argument as "false". <u>Id.</u> at 47. The Court explained that "the operative language in § 1681h(e) provides only that the provision does not preempt a certain narrow class of state law claims; it does not prevent the later-enacted § 1681t(b)(1)(F) from accomplishing a more broadly-sweeping preemption." <u>Id.</u> at 48.

Likewise, a number of District Courts in Alabama have reached the same conclusion: Section 1681t(b)(1)(F) totally preempts state law statutory and common law causes of action regarding the furnishing of information to credit reporting agencies.[12] See e.g., <u>Schlueter v. BellSouth Comm.</u>, 770 F.Supp.2d 1204, 1209-11 (N.D.Ala. 2010) (Chief Judge Blackburn); <u>Abbett v. Bank of America</u>, 2006 WL 581193, at * 5 (M.D.Ala. 2006) (Judge Watkins) ("Allowing any private state law action to proceed against a furnisher of information based on

---

[12]     But see e.g., <u>Kamps v. Midland Funding, LLC</u>, 2013 WL 622505, at *4 (N.D.Ala. 2013) (Judge Bowdre) (but no mention of Section 1681t(b)(1)(F)); <u>Champion v. Global Credit Card Services, LLC</u>, 2012 WL 3542225, at **4-5 (N.D.Ala. 2012) (Judge Johnson).

violations of duties established by § 1681s-2(a) is inconsistent with the FCRA.").[13]

Based on this authority, Plaintiff's Thirteenth Cause of Action is preempted by the FCRA. All other causes of action are preempted to the extent she seeks damages or relief arising out of Chase's reporting of information to credit agencies.[14]

## B.   Plaintiff cannot seek damages for her miscarriage due to lack of causation evidence:

Plaintiff had miscarriages in February of 2007 and May of 2008, before the birth of her first child. (SoF 28). She became pregnant again in November of 2010, and was approximately three weeks pregnant when she suffered a miscarriage on December 18, 2010. (Sof 29-30). In this case, she alleges that this third miscarriage was "due to the severe emotional distress caused by Chase's misconduct described hereinabove." (Doc. 1-1 at ¶ 37). She adopts and

---

[13]   See also Jackson v. Countrywide Home Loans, Inc., 2012 WL 777180, at **5-6 (M.D.Ala. 2012) (Chief Judge Fuller); Bowman v. CitiMortgage, Inc., 2011 WL 2039576, at **2-4 (S.D.Ala. 2011) (Magistrate Judge Nelson); Wilson v. Midland Credit Management, Inc., 2009 WL 2059332, at **1-3 (S.D.Ala. 2009) (Judge Steele); Bosarge v. T-Mobile USA, Inc., 2008 WL 725017, at **3-5 (S.D.Ala. 2008) (Chief Judge Granade); Knudson v. Wachovia Bank, N.A., 513 F.Supp2d. 1255, 1258-61 (M.D.Ala. 2007) (Judge Albritton).

[14]   The two other approaches to the FCRA preemption question are known as the "temporal" and "statutory" approach. The former approach reasons that Section 1681h(e) preempts state law claims based on the actions of a furnisher of information before it has received notice of the inaccuracy, and Section 1681(b)(1)(F) applies after the furnisher received the notice. See e.g., Woltersdorf v. Pentagon Fed. Credit Union, 320 F.Supp.d 1222, 1226-27 (N.D.Ala. 2004) (Judge Hancock). With the latter approach, Section 1681f(b)(1)(F) preempts only state statutory causes of action, and Section 1681h(e) addresses preemption of state common law causes of action. See e.g., McCloud v. Homeside Lending, 309 F.Supp.2d 1335, 1341 (N.D.Ala. 2004) (Judge Smith).

incorporates this allegation into each of her thirteen causes of action against Chase.[15]   Plaintiff became pregnant again on December 22, 2010, and this pregnancy was normal and resulted in the birth of a healthy girl in September of 2010.  (SoF 31-32).

Without intending to diminish the painful consequences of Plaintiff having suffered a miscarriage, she simply cannot recover damages for it in this case because there is not sufficient evidence to carry her burden of proof on causation. Plaintiff has the burden of proof to establish, through non-speculative evidence, the damages and injuries allegedly resulting from Chase's conduct:  "The rule has long been established that the party claiming damages has the burden of establishing the existence of and amount of those damages by competent evidence...."  Jerkins v. Lincoln Electric, Co., 103 F.3d 1, 11 (Ala. 2011) (citations omitted).

Here, but for her own testimony, Plaintiff has no evidence to support the assertion that Chase's alleged conduct was the proximate cause of her December of 2010 miscarriage.[16]   She does not have a medical expert on the subject of causation.  (See Doc. 34, disclosing only a credit and damages expert, Evan D. Hendricks).  The only medical evidence on the issue of causation of Plaintiff's third

---

[15]   See Doc. 1-1 at ¶¶ 56, 63, 70, 75, 80, 85, 91, 94, 97, 103, 107, 109, and 114.

[16]   Plaintiff testified that she suffered a miscarriage on or about December 18, 2010, at which time she was approximately three weeks pregnant.  (SoF 29-30).  She became pregnant again days later on approximately December 22, 2010, and carried the pregnancy to term and gave birth to a healthy baby in September of 2011.  (SoF 31-32).

miscarriage comes from Chase's medical expert, Cornelia Rose Graves, M.D., a practicing OB-GYN with a wealth of experience and qualifications in her field, who has opined that the miscarriage cannot with any reasonable degree of medical certainty be attributed to the stress allegedly resulting from Chase's actions. (See Doc. 41; Graves' Expert Report dated January 14, 2013, at pp. 1-2; Graves' Supplemental Expert Report dated January 30, 2013, at pp. 1-2). Plaintiff has no expert evidence to counter or rebut Dr. Graves' opinion and, as a result, cannot meet her burden of proof to establish that the miscarriage was the proximate result of Chase's conduct.[17]  Therefore, Chase is entitled to summary judgment as to this claim and any request for relief or damages flowing or arising from it.

**C.**    **The remaining specific causes of action asserted by Plaintiff fail.[18]**

**1.**    **Fraud:**

To prove a claim of fraudulent misrepresentation under Alabama law, Plaintiff must establish "(1) that [Chase] made a false representation, (2) that the misrepresentation involved a material fact, (3) that [Plaintiff] relied on the

---

[17]    Similarly, Alabama generally requires expert evidence to establish proximate causation in claim for medical malpractice where the issue is beyond the understanding of the average layperson.  See Lively v. Kilgore, 51 So.2d 1045, 1049-50 (Ala.Civ.App. 2010) (citations omitted).  Clearly, the cause of an event as medically complicated as a miscarriage is beyond the understanding of the average layperson.  See also Wingster v. Head, 318 Fed.Appx. 809, 813 (11th Cir. 2010) (commenting that the cause of an aneurysm is beyond the understanding of the average layperson).

[18]    Chase addresses the causes of action in the order in which they appear in the Complaint (Doc. 1-1).

misrepresentation, and (4) that the misrepresentation damaged [Plaintiff]." GE Capital Aviation Services, Inc. v. Pemco World Air Services, Inc., 92 So.3d 749, 759 (Ala. 2012) (citation omitted). In order "for a plaintiff to state a fraud claim, he must show that a misrepresentation induced him to act in a way that he would not otherwise have acted, that is, that he took a different course of action because of the misrepresentation." GE Capital, 92 So.3d at 759 (citation omitted).[19] Plaintiff's fraud claim based on the alleged statements set forth in paragraph 57 of her Complaint fail for lack of evidence as to each of these required elements.[20]

> (a)    *That the payoff amount provided to the Plaintiff and her property insurer State Farm was the amount necessary to pay all sums owed by the Plaintiff and secured by the Mortgage.*

True. The payoff amount quoted to Plaintiff, $301,608.58, was accurate at that time, Plaintiff paid no additional money, and it was the amount of the insurance proceeds ultimately applied to pay off the loan. (SoF 14, 15, 23, and 27). Plaintiff did not rely to her detriment on the statement.

> (b)    *That these insurance proceeds would be applied to pay off the entire*

---

[19]    Before addressing the merits of Plaintiff's fraud claim, Chase notes that many of the claims fail because they do not meet the requirement that the fraud be pled with particularity. See FED. R. CIV. P. 9(b). Plaintiff sets forth a litany of alleged misrepresentations in Paragraph 57 of the Complaint but none of them are stated with the particularity required by the Alabama or Federal Rule 9(b). Each is lacking the required allegations of "who, what, when, and where". See United States ex rel Atkins v. McInteer, 470 F.3d 1350, 1357 (11th Cir. 2006). Therefore, the fraud claim should be dismissed in its entirely due to this fundamental deficiency.

[20]    Given the lack of particularity pled, it is not clear if any of the alleged statements of fact (or alleged suppressions of fact) were made verbally to Plaintiff. To the extent Plaintiff relies on verbal statements to support her claim of fraud or fraudulent suppression, then the claim is barred and not enforceable under the Alabama Statute of Frauds. See ALA. CODE § 8-9-2.

*loan balance owed by the Plaintiff.*

True.  The insurance proceeds were used to pay off the entire loan balance owed by Plaintiff.  (SoF 14, 15, 23, and 27).  She did not rely to her detriment on the statement.

(c)  *That Chase was the owner of the Note secured by the Mortgage.*

(d)  *That Chase was authorized to act for or on behalf of the owner of the Note secured by the Mortgage or possessed the servicing rights to the Mortgage.*

Plaintiff did not rely to her detriment on these facts.  Chase was the servicer of the Mortgage and the holder of the Note.  (SoF 7-10).

(e)  *That Chase was authorized to accept funds to pay off all sums owed by Plaintiff secured by the Mortgage.*

True.  Chase did accept the insurance funds and used them to pay off the loan.  (SoF 14-17, 23, and 27).  There is no evidence that Plaintiff relied to her detriment on the statement.

(f)  *That Chase was authorized to foreclose on the Mortgage securing Plaintiff's loan as it set out in its Notice of Intent to Foreclose dated August 27, 2010.*

Plaintiff has no evidence to demonstrate that this statement was false, nor is there any evidence that she relied to her detriment on it.  As the holder of the Note

(SoF 9-10), Chase had the legal authority to initiate foreclosure.[21]

> *(g)     That Plaintiff was in default because she "failed to pay" her July and August mortgage payments.*

True.  Plaintiff failed to make her loan payments in July and August of 2010,

which constituted default under her Mortgage and Note.  (SoF 2-3, 5, 13, and 27).

There is no evidence that Plaintiff relied to her detriment on this statement.

> *(h)     That Chase did not know how to apply the insurance funds for the loan payoff even though Chase itself gave State Farm instructions on the amount necessary to pay off the entire loan balance and Chase had already negotiated and deposited the State Farm draft proceeds to or for its own account.*

There is no evidence of detrimental reliance on this statement.

> *(i)     That Fannie Mae was the "loan investor" for Plaintiff's Mortgage loan, in other words the owner of the Note secured by the Mortgage on Plaintiff's Property.*

True.  (SoF 7).  There is no evidence of detrimental reliance.

> *(j)     That Fannie Mae had denied the Plaintiff's request to apply the insurance proceeds to pay off the Plaintiff's mortgage loan (proceeds that Chase had been holding in its own account for over three months at that time).*

> *(k)     That Fannie Mae proposed that Plaintiff contact the Chase Loss Mitigation department and/or that Plaintiff request to have a deed executed to Fannie Mae and/or Chase in lieu of a foreclosure on Plaintiff's Property.*

True.  (SoF 19-21).  There is no evidence of detrimental reliance.

---

[21]     See Coleman v. BAC Servicing, 104 So. 3d 195, 200-01 (Ala.Civ.App. 2012); Perry v. Fed. Nat'l Mortg. Assoc., 100 So. 3d 1090, 1094-95 (Ala.Civ.App. 2012); ALA. CODE § 35–10–12.

2.   **Fraudulent Suppression**:

To establish fraudulent suppression, Plaintiff must demonstrate "(1) that [Chase] had a duty to disclose an existing material fact; (2) that [Chase] suppressed that material fact; (3) that [Chase] had actual knowledge of the fact; (4) that [Chase's] suppression of the fact induced [Plaintiff] to act or refrain from acting; and (5) that [Plaintiff] suffered actual damage as a proximate result." GE Capital, 92 So.3d at 762.   Plaintiff sets out the alleged fraudulently suppressed facts in Paragraph 65, but each fail for failing to satisfy each of the required elements:

*(a)     The payoff amount provided by Chase to Plaintiff and State Farm was incorrect and was not the amount necessary to pay off Plaintiff's mortgage loan.*

There is no evidence that this alleged suppressed fact is true, because the amount of the pay off which was sent by State Farm was the amount applied to satisfy the loan.

*(b)     That the "payoff amount" paid and sent by State Farm directly to Chase would not be applied to pay sums secured by the Mortgage but would instead be unlawfully converted by Chase to its own use.*

Not only is this statement false (the insurance funds **were** used to pay off the loan and Chase did not convert them for its own use (SoF 14-17 and 23-25)), but this constitutes an allegation of promissory fraud in that it contemplates Chase's "'promise to act or not to act in the future'". North Alabama Electric Cooperative v. TVA, 862 F.Supp.2d 1291, 1302 (N.D.Ala. 2012) (citation omitted).   There is

- 20 -

no evidence that Chase had the intention at the time it allegedly suppressed these facts not to pay off the Mortgage with the insurance funds or the intent to deceive Plaintiff.[22] TVA, 862 F.Supp.2d at 1302 (citations omitted).

> (c)   *That Chase was not the owner of the Note secured by the Mortgage.*

> (d)   *That Chase was not authorized to act for or on behalf of the owner of the Note secured by the Mortgage.*

> (e)   *That Chase did not possess the servicing rights to the Mortgage.*

Plaintiff did not rely to her detriment on these facts.  Chase was the servicer of the Mortgage and the holder of the Note.  (SoF 7-10).

> (f)   *That at all material times Chase Home Finance, LLC was not (and still is not) qualified as a foreign limited liability company to transact business in the State of Alabama.*

Chase, which is a federally chartered bank, is exempted from the Secretary of State registration/qualification requirements set forth in ALA. CODE § 10A-2-15.01.  See Watters v. Wachovia Bank, N.A., 550 U.S. 1 (2007) (national banks, and their subsidiaries (such as Chase Home Finance LLC ("CHF"), formerly a subsidiary of Chase until a merger), are not subject to state licensing/reporting requirements).[23]  Plaintiff has not presented any evidence that she was in any way

---

[22]   "A heavier burden is placed upon a plaintiff in a promissory-fraud case than in an ordinary fraud case." Ex parte Moulton, 2013 WL 285726, at *23 (Ala. 2013) (citation omitted).

[23]   "A national bank has the power to engage in real estate lending through an operating subsidiary, subject to the same terms and conditions that govern the national bank itself; that power cannot be significantly impaired or impeded by state law." Watters, 550 U.S. at 21.

damaged or injured due to CHF not having registered/qualified.

### 3.   **Conversion:**

Plaintiff cannot establish conversion, which requires "proof of a wrongful taking, an illegal assumption of ownership, an illegal use or misuse of another's property, or a wrongful detention or interference with another's property." Crown Life Ins. Co. v. Smith, 657 So.2d 821, 823 (Ala. 1994). Here, State Farm, voluntarily and with the knowledge and consent of Plaintiff, mailed a check for insurance proceeds to Chase on August 31, 2010. (SoF 14-15). Chase deposited those funds into a restricted escrow account on September 13, 2010. (SoF 16). Chase did not acquire the funds by any illegal or wrongful means. See Jones v. DCH Health Care Auth., 621 So.2d 1322, 1324 (Ala. 1993) ("'In order to constitute conversion, nonconsent to the possession and the disposition of the property by defendant is indispensable.'") (citation omitted). Further, Chase did not receive any interest or other income on the insurance funds during this time (SoF 17) and there is no evidence that Chase used or appropriated the funds as its own.[24]

### 4.   **Breach of Contract:**

Plaintiff asserts that Chase breached the Mortgage by failing to apply the

---

[24]     See also Vandenberg v. Aramark Educational Services, Inc., 81 So.2d 326, 343 (Ala. 2011) (rejecting a conversion claim by university students over dining dollars programs: "The complaints do not support a finding that any party took or otherwise illegally assumed ownership of the students' funds.  There is no allegation that any party wrongfully accessed deposit accounts belonging to the students and withdrew the money or that any party otherwise took the funds from the students without the students' consent.  Nor is there an allegation that the funds were obtained through fraud, artifice, stealth, or trickery.").

insurance proceeds to pay off her mortgage loan.  (See Doc. 1-1 at ¶¶ 76-79).   One requirement for a breach of contract claim, however, is the plaintiff's own performance with the terms of that contract.  GE Capital, 92 So.3d at 763 (citations omitted).[25]   Plaintiff cannot establish she met this requirement at the time the insurance funds were sent to Chase by State Farm because she was admittedly in default on her loan payments.   (SoF 2-3, 5, 13, and 27).   Additionally, the Mortgage provides that insurance funds will be used to repair the Property unless both Chase and the borrower agree otherwise in writing.   (SoF 6 and 18). Accordingly, Chase acted in compliance with the Mortgage by holding the insurance funds pending written instructions from Plaintiff.[26]

### 5.   <u>Wrongful Foreclosure:</u>

Plaintiff cannot maintain a claim of wrongful foreclosure (Fifth Cause of Action -- ¶¶ 81-84) because no foreclosure sale was ever even scheduled, much

---

[25]      Under Alabama law, a party suing for breach of contract must show "either their fidelity to the terms of the contract during performance or that they have a legitimate excuse for their nonperformance."  Forester, 2012 WL 3206471, at *6 (citation omitted).  "Courts should not enforce an agreement where the party seeking enforcement has failed to perform his part of the agreement."  Gray v. Reynolds, 553 So.2d 79, 82 (Ala. 1989).

[26]      Plaintiff cannot claim ignorance of this provision in the Mortgage or seek to make Chase responsible for reminding her of the requirement:  "[A] person who signs a contract is on notice of the terms therein and is bound thereby, even if he or she fails to read the document." Ex parte Renovations Unlimited, Inc., 59 So.3d 679, 684 (Ala. 2010) (citations omitted).  See also Foremost Ins. Co. v. Parham, 693 So.2d 409, 421 (Ala. 1997) (a "trial court can enter a judgment as a matter of law in a fraud case where the undisputed evidence indicates that the party or parties claiming fraud in a particular transaction were fully capable of reading and understanding their documents, but nonetheless made a deliberate decision to ignore written contract terms").

less occurred, with respect to Plaintiff's Mortgage and Property.   (SoF 26).

Alabama law provides that "[a] mortgagor has a wrongful foreclosure action

whenever a mortgagee **uses the power of sale** given under a mortgage for a

purpose other than to secure the debt owed by the mortgagor." Reeves Cedarhurst

Dev. Corp. v. First Am. Fed. Sav. and Loan, 607 So.2d 180, 182 (Ala. 1992)

(emphasis supplied).   Courts interpreting Alabama law have consistently held that

unless a foreclosure sale actually occurs, the power of sale has not been exercised,

and a claim based only on pre-sale proceedings cannot satisfy the Reeves standard.

See e.g., Hardy v. Jim Walter Homes, Inc., 2007 WL 174391, at *6 (S.D.Ala. Jan.

18, 2007) ("[T]he clear weight of authority from other jurisdictions is that wrongful

foreclosure actions are not recognized unless a foreclosure actually takes place.").[27]

### 6.      **Third-Party Beneficiary:**

Plaintiff asserts a third-party beneficiary claim under the loan servicing

agreement ("LSA") between Chase and Fannie Mae (Doc. 1-1, at ¶¶ 86-90), but

she does not identify a specific provision which she claims was breached.   Nor

does she have evidence of the LSA itself, which prevents her from establishing that

she is a third-party beneficiary of it, nor can the Court evaluate that claim.[28]

---

[27]      See also Forester, 2012 WL 3206471, at *3-4 (relying on Reeves to hold that a
wrongful foreclosure claim, where no sale had occurred, fell short of that standard).

[28]      Under Alabama law, "To recover under a third-party beneficiary theory, the
complainant must show: 1) that the contracting parties intended, at the time the contract was
created, to bestow a direct benefit upon a third party; 2) that the complainant was the intended

Even if the LSA were before the Court, this claim would fail based on applicable federal case law:  "[T]he overwhelming majority of courts have held that borrowers are not third-party beneficiaries to the servicing contracts between entered into between loan servicers and Fannie Mae."  <u>Duff v. Federal Nat. Mortg. Ass'n</u>, 2012 WL 692120, at *5 (E.D.Mich. 2012) (citations omitted).[29]

### 7. and 8.    <u>Negligence and Wantonness</u>:

Plaintiff cannot maintain her claims that Chase was negligent and wanton in allegedly failing to fulfill its duties under the Mortgage and the LSA as the loan servicer.  (Seventh and Eighth Causes of Action, Doc. 1-1 at ¶¶ 92-93 and 95-95).  First, Alabama law "does not recognize a tort-like cause of action for the breach of a duty created by contract."  <u>See e.g.</u>, <u>Blake</u>, 845 F.Supp.2d at 1210-11.[30]  Instead, "[a] tort claim can only be asserted when the duty of reasonable care, which one

---

beneficiary of the contract; and 3) that the contract was breached."  <u>Pyun v. Paul Revere Life Ins. Co.</u>, 768 F.Supp.2d 1157, 1177 (N.D.Ala. 2011) (citation omitted).

[29]    <u>See also</u> <u>Blake</u>, 845 F.Supp2d at 1212-13 (rejecting a home mortgage loan borrower's third-part beneficiary claim to a "pooling and servicing agreement" because the borrower was only an incidental, and not and intended, beneficiary) <u>Correll v. Bank of Am., N.A.</u>, 2012 WL 348594, at *4 (E.D.Va. 2012) ("Courts have also uniformly rejected the contention that individuals have a right to sue as third-party beneficiaries to contracts between mortgage providers and Fannie Mae.") (internal quotations and citations omitted); <u>In re: Newell</u>, 2012 WL 909200, at *2 (Bkrtcy.S.D.Fla. 2012) ("The vast majority of courts to examine this issue have held that a homeowner is not an intended third-party beneficiary of the servicer participation agreement between his or her servicer and the government and does not have the right to enforce the agreement against the servicer.").

[30]    <u>See also</u> <u>Fassina v. CitiMortgage, Inc.</u>, 2012 WL 2577608, at *6 (N.D.Ala. July 2, 2012); (<u>McClung v. Mortgage Electronic Registration Systems, Inc.</u>, 2012 WL 1642209, at *7 (N.D.Ala. May 7, 2012).

owes to another in the course of day-to-day affairs, has been breached and causes personal injury or property damages." Id. at 1210. "Pure economic loss ... does not suffice" to impose liability on an agent as a result of a breach of a duty of reasonable care while servicing a mortgage.[31] Blake, 845 F.Supp.2d at 1210-11. Thus, it follows that Alabama law "does not recognize a cause of action for negligent or wanton mortgage servicing." McClung, 2012 WL 1642209, at *7.[32]

### 9. Negligent or Wanton Supervision, Retention, Hiring, or Training:

Plaintiff's Ninth Cause of Action for negligent and/or wanton supervision, retention, training, and/or hiring is essentially identical to the Seventh and Eighth Causes of Action for negligence and wantonness -- Plaintiff asserts that Chase is liable for its individual employees' alleged failure to perform the servicing obligations required of Chase under the Mortgage and LSA. (See Doc. 1-1 at ¶¶ 98-102). But, if the negligence and wantonness claims fail because Alabama does not recognize a claim for negligent or wantonness mortgage servicing, then the derivative claim found in the Ninth Cause of Action must fail on the same grounds. Chase can only act through its employees, and any duty or obligation its employees owed to Plaintiff, or that Chase owed to hire, supervise, and train those employees, necessarily derives from the Mortgage and LSA.

---

[31] Plaintiff's one claim of alleged physical injury -- the miscarriage -- is not maintainable.

[32] See also Forester, 2012 WL 3206471, at **4-5.

10.   **Unjust Enrichment**:

Plaintiff's Tenth Cause of Action is for unjust enrichment, alleging that Chase was "unjustly enriched and secured benefits in the form of interest and other profits earned from [its] improper usurpation and receipt of the Plaintiff's insurance funds of over $300,000." (Doc. 1-1 at ¶ 105).  "To prevail on a claim of unjust enrichment under Alabama law, a plaintiff must show that:  (1) the defendant knowingly accepted and retained a benefit, (2) provided by another, (3) who has a reasonable expectation of compensation." Brenda Darlene, Inc. v. Bon Secour Fisheries, Inc., 101 So.3d 1242, 1254 (Ala.Civ.App. 2012) (quoting Portofino Seaport Vill., LLC v. Welch, 4 So.3d 1095, 1098 (Ala. 2008)).  As the plain language of the name of the claim (*enrichment*) makes clear, however, the defendant must have reaped a benefit to support an unjust enrichment claim:

> "[w]here the plaintiff has suffered a detriment, and the defendant has received a benefit as a result, it is said that justice demands the repayment by the defendant of the plaintiff's loss.  The measure of the defendant's liability is, however, limited to the value of the benefit received, whether or not it is equal to, less than, or greater than the plaintiff's loss."

Brenda Darlene, 101 So.2d at 1254 (citation omitted).

Here, Chase has affirmatively confirmed that it did not earn any interest or income from the insurance funds while it was held in restricted escrow before being applied to pay off Plaintiff's home mortgage loan. (SoF 17).  Chase was not "enriched" -- it derived no financial benefit from the insurance funds.

- 27 -

This claim also fails because Plaintiff cannot proceed under the dual theories of breach of contract (Fourth and Sixth Causes of Action) and unjust enrichment, which is considered to be a breach of an implied contract, over the same subject matter.[33]  See Kennedy v. Polar-BEK & Baker Wildwood Partnership, 682 So.2d 443, 447 (Ala. 1996) ("[U]nder Alabama law, claims of both an express and an implied contract on the same subject matter are generally incompatible").

### 11.   Violation of TILA:

Plaintiff's Eleventh Cause of Action asserts that Chase violated 15 U.S.C. § 1639f of the Truth in Lending Act ("TILA").  (Doc. 1-1 at ¶ 108).  This statute was enacted on July 21, 2010 as part of the Dodd-Frank Wall Street Reform and Consumer Protection Act, but it did not take effect until the final regulations implementing it where published or within eighteen (18) months after the designated transfer date (July 21, 2011; See 75 Federal Register 181, Sept. 20, 2010), if no regulations had been implemented by that deadline.  See Pub.L. 111 - 203, § 1400(c).  The interim final rule publishing the regulations to 15 U.S.C. § 1639f did not occur until December 22, 2011, with an effective date of December 30, 2011.  76 FR 79772, Dec, 22, 2011.  Accordingly, the provisions of 15 U.S.C. § 1639f were not in effect during the time period of the events made the subject of

---

[33]     "[U]nder Alabama law, it is clear that an unjust enrichment claim sounds in the nature of quasi-contract, as the law equitably implies a contract between the parties to prevent the unjust enrichment of a defendant at the expense of a plaintiff."  White v. Microsoft Corp., 454 F.Supp.2d 1118, 1132 (S.D.Ala. 2006) (citation omitted).

the Complaint (September of 2010 through February of 2011; <u>See</u> Doc. 1-1 at ¶¶

14-44) some almost one year earlier.

## 12.  <u>Violation of RESPA</u>:

The first part of Plaintiff's Twelfth Cause of Action asserts that Chase

violated 12 U.S.C. § 2605(e)(2)(A) and (B) of the Real Estate Settlement

Procedures Act ("RESPA").  (Doc. 1-1 at ¶¶ 110-12).  Plaintiff's Complaint does

not specifically identify the written communication which she contends was a

Qualified Written Request ("QWR").  Despite that pleading defect, it is clear from

the Complaint that the earliest date upon which Plaintiff could have sent Chase a

QWR was the first letter sent by her attorney on December 21, 2010, although in

truth the only arguable QWR was the attorney's letter of January 13, 2011.[34]  (Doc.

1-1 at ¶¶  38 and 42).  It is undisputed that well within sixty (60) days of Chase's

receipt of these letters, Chase had taken appropriate corrective action to pay off the

loan as of January 27, 2011, and sent Plaintiff a letter dated January 28, 2011

confirming this action had been taken.  (Doc. 1-1 at ¶ 43).  Thus, even by Plaintiff's

own admissions, Chase timely satisfied its obligations under 12 U.S.C. §

2605(e)(2)(A) and (B).

---

[34]      Chase does not concede that this letter or the letter dated December 30, 2010,
constituted QWRs. (Doc. 1-1 at ¶ 40).  <u>See</u> 12 U.S.C. § 2605(e)(1)(B) (defining a QWR to
require, among other things, "a statement o the reasons that the borrower believes the account is
in error").

# III.  CONCLUSION

Based on the foregoing evidence and authorities, no genuine dispute/issue of material fact exists and Chase is entitled to the entry of a summary judgment in its favor as a matter of law on Causes of Action One through Eleven and Thirteen of the Complaint and that portion of Cause of Action Twelve which asserts a violation of 12 U.S.C. §§ 2605(e)(2)(A) and (b) of RESPA.

With the foregoing causes of action, and related requests for relief, dismissed, with prejudice, the only viable claim remaining is  under Cause of Action Twelve for a violation of 12 U.S.C. § 2605(e)(3)[35] of RESPA.  If such a violation can be established (Chase does not admit or concede liability),[36] Plaintiff would be entitled to recover actual damages permitted by statute caused as a result of that violation for the sixty day period following Chase's receipt of a QWR.

---

[35]      "During the 60-day period beginning on the date of the servicer's receipt from any borrower of a qualified written request relating to a dispute regarding the borrower's payments, a servicer may not provide information regarding any overdue payment, owed by such borrower and relating to such period or qualified written request, to any consumer reporting agency (as such term is defined under section 1681 a of Title 15."

[36]      There is a question whether Plaintiff can even maintain this claim under the plain language of RESPA's "safe harbor" provision, 12 U.S.C. § 2605(f)(4).  During the applicable 60-day period running from Chase's receipt of the January 13, 2011 letter from Plaintiff's attorney, Chase used the insurance funds to pay off the loan, provided Plaintiff with written notice of this corrective action, and Plaintiff did not pay any additional amount over the amount of the August 24, 2010 pay off quote, all *before* Plaintiff filed suit.  (SoF 14-16, 22-24, and 27).  At least one federal District Court has applied the safe harbor provision to bar a claim under 12 U.S.C. § 2605(e)(3) under similar facts, but that decision was reversed on appeal on other grounds without any view expressed on the District Court's reasoning.  See Catalan v. GMAC Mortgage Corp., 629 F.3d 676, 685 (7th Cir. 2011).

Respectfully submitted, this the **1ˢᵗ** day of **March**, **2013**.

Attorneys for Defendant,
JPMorgan Chase Bank, N.A.,
as the successor by merger to
Chase Home Finance LLC:

*/s/ Sandy G. Robinson*
**SANDY G. ROBINSON**
CABANISS, JOHNSTON, GARDNER,
   DUMAS & O'NEAL LLP
Post Office Box 2906
Mobile, Alabama  36652
Telephone:  (251) 415-7300
Facsimile:  (251) 415-7350
E-Mail:      sgr@cabaniss.com

*/s/ Michael E. Turner*
**MICHAEL E. TURNER**

*/s/ Jason W. Bobo*
**JASON W. BOBO**
CABANISS, JOHNSTON, GARDNER,
   DUMAS & O'NEAL LLP
2001 Park Place North, Suite 700
Birmingham, Alabama  35203
Telephone:  (205) 716-5200
Facsimile:  (205) 716-5389
E-Mail:      met@cabaniss.com
                  jwb@cabaniss.com

- 31 -

## CERTIFICATE OF SERVICE

I hereby certify that on this date I caused a true and accurate copy of the foregoing **DEFENDANT'S BRIEF IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT** to be electronically filed with the Clerk of Court for the United States District Court for the Northern District of Alabama, which will send electronic notification of such filing to all counsel of record.

This the **1**st day of **March, 2013**.

/s/ Michael E. Turner
**OF COUNSEL**