FILED
2013 Jun-26  PM 12:18
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| **APRIL K. BARNETT,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.:  1:12-CV-1745-VEH** |
| | ) |
| **JP MORGAN CHASE BANK,** | ) |
| **NATIONAL ASSOCIATION, as** | ) |
| **successor by merger to CHASE** | ) |
| **HOME FINANCE, LLC,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION AND ORDER

## I.     INTRODUCTION

This lawsuit filed by Plaintiff April K. Barnett ("Ms. Barnett") on Mach 7, 2012, originated in the Circuit Court of Talladega County, Alabama. (Doc. 1-1 at 2).[1] Defendant JP Morgan Chase Bank, N.A., the successor by merger to Chase Home Finance, LLC ("Chase"), removed the litigation to federal court on May 1, 2012, on the basis of both federal question and diversity jurisdiction. (Doc. 1 at 1; *id.* at 5 ¶ 9; *id.* at 8 ¶ 14).

---

[1]     The page references to Doc. 1-1 correspond with the court's CM/ECF numbering system.

Ms. Barnett's complaint arises out of her borrower-related dealings with Chase after her family's residence "was completely destroyed by an accidental electrical fire" on June 14, 2010.  (Doc. 1-1 at 4 ¶ 10).  Her pleading contains thirteen causes of action.  (*See generally* Doc. 1-1).

On March 1, 2013, Chase filed a Motion for Partial Summary Judgment (Doc. 53) (the "Partial Motion") as separately supported by a brief (Doc. 54) and evidentiary materials.  (Docs. 55, 57).  The Partial Motion seeks a dismissal of the following counts:  one through eleven, part of count twelve, and thirteen.  (Doc. 53 at 1 ¶ 1).  The Partial Motion also requests an "entry of judgment in its favor on Plaintiff's claim that she suffered a miscarriage as a result of Chase's alleged conduct."  (*Id.* at 1-2 ¶ 2).

On March 15, 2013, Ms. Barnett filed a Motion To Strike (Doc. 59) (the "Strike Motion") certain exhibits relied upon by Chase.  Ms. Barrett also opposed the Partial Motion with a brief (Doc. 60) and evidence (Doc. 61) on March 22, 2013, and additional proof (Doc. 63) on March 25, 2013.  Ms. Barnett subsequently filed an amended response (Doc. 67) to Chase's Partial Motion on April 8, 2013.

Chase followed with a reply brief (Doc. 68), submitted more evidence (Doc. 69), and opposed Ms. Barnett's Strike Motion (Doc. 71), all on April 22, 2013. Finally, on April 23, 2013, supplemental proof in support of the Partial Motion was

filed under seal (Doc. 72) pursuant to an earlier court order.

Both the Partial Motion and Strike Motion are now under submission.  For the reasons stated below, the Partial Motion is **GRANTED IN PART** and **DENIED IN PART**, and the Strike Motion is **TERMED** as **MOOT**.

## II.   FACTUAL BACKGROUND[2]

### A.   Ms. Barnett borrows money to purchase a home.

Ms. Barnett executed a note on May 15, 2007, (the "Note") in favor of ERA Mortgage ("ERA") in the original amount of $308,000.00, relating to her purchase of residential property for her family.  AF No. 1.[3]   The Note obligated Ms. Barnett

---

[2]   Keeping in mind that when deciding a motion for summary judgment the court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion, the court provides the following statement of facts. *See Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1241 (11th Cir. 2007) (observing that, in connection with summary judgment, a court must review all facts and inferences in a light most favorable to the non-moving party). This statement does not represent actual findings of fact.  *See In re Celotex Corp.*, 487 F.3d 1320, 1328 (11th Cir. 2007).  Instead, the court has provided this statement simply to place the court's legal analysis in the context of this particular case or controversy.

[3]   The designation "AF" stands for admitted fact and indicates a fact offered by Chase that Ms. Barnett has admitted in her written submissions on summary judgment or by virtue of any other evidence offered in support of his case.  Whenever Ms. Barnett has adequately disputed a fact offered by Chase, the court has accepted Ms. Barnett's version. The court's numbering of admitted facts (*e.g.*, AF No. 1) corresponds to the numbering of Chase's statement of facts as set forth in Doc. 54 and responded to by Ms. Barnett in Doc. 67.  Other facts referenced by the parties that require further clarification are dealt with later in the court's opinion.

to make a monthly payment of principal and interest beginning on July 1, 2007, with a maturity date of June 1, 2037.  The Note further provided that Ms. Barnett's failure to make a monthly payment by the date it was due would constitute default.  AF No. 3.

The Note was secured by a mortgage executed by Ms. Barnett in favor of Mortgage Electronic Registration Systems, Inc. ("MERS"), acting solely as nominee for ERA (the "Mortgage"), on property owned by Ms. Barnett located at 101 Karian Court, Oxford, Alabama 36203 (the "Property").  AF No. 4.  Pursuant to the terms of this Mortgage, Ms. Barnett was obligated "pay when due the principal of, and interest on, the debt evidenced by the Note . . . ."  AF No. 5.

Concerning an insured loss, the Mortgage directed in part:

Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened.  During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had the opportunity to inspect the Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly.  Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. . . .  If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds

shall be applied to the sums secured by the Security Instrument, whether
or not then due, with the excess, if any, paid to Borrower.

(Doc. 55-3 at 48-49 at 00006-00007).[4]

Federal National Mortgage Association ("Fannie Mae") became the investor
of Ms. Barnett's Mortgage on May 29, 2007.  AF No. 7.   Chase began servicing the
Mortgage on November 13, 2007.  AF No. 8.

As part of the servicing transfer, Chase received physical possession of the
Note, which was endorsed in blank.  AF No. 9.  Chase remained in possession of the
Note until it was paid off on January 27, 2011.  AF No. 10.

**B.     An electrical fire destroys Ms. Barnett's home.**

On June 14, 2010, Ms. Barnett's home located on the Property was completely
destroyed by an electrical fire.   AF No. 11.  Ms. Barnett made her monthly Mortgage
payment in June of 2010.  Ms. Barnett did not make her mortgage payments due in
July and August of 2010.  AF No. 13.

**C.     Ms. Barnett's efforts to use her insurance proceeds to pay off
        her loan serviced by Chase.**

On August 24, 2010, Chase provided Ms. Barnett with a quote to pay off her
Mortgage loan in the amount of $301,608.58, good through September 3, 2010.  AF

---

[4]     The page references to Doc. 55-3 correspond with the court's CM/ECF
numbering system.

No. 14.  On August 31, 2010, Ms. Barnett's insurance carrier, State Farm, mailed a check to Chase in the amount of $301,608.58.  AF No. 15.

Chase received the draft from State Farm on September 3, 2010.  (Doc. 66-5 at 1).[5]  The insurance proceeds check was deposited by Chase on September 13, 2010, to a restricted escrow account, which was tied to Ms. Barnett's loan.  AF No. 16.  Chase did not receive any interest or other income from the insurance funds.  AF No. 17.

Chase contends that it did not receive written authorization from Ms. Barnett to apply the insurance proceeds from State Farm to pay off the loan until November 9, 2010.  (Doc. 54 at 6 ¶ 18).[6]  However, prior to November 9, 2010, on July 1, 2010, Chase received a letter from Ms. Barnett advising that "[a]t a later date, we will be sending a check for the mortgage pay off."  (Doc. 66-3 at 5).[7]  Additionally, on September 3, 2010, Chase received "a draft in the amount of $301,608.58 for the payoff of loan 1916804276. . . . on behalf of our insured [Ms. Barnett]."  (Doc. 66-5

---

[5]   The page references to Doc. 65-5 correspond with the court's CM/ECF numbering system.

[6]    The page references to Doc. 54 correspond with the court's CM/ECF numbering system.

[7]   The page references to Doc. 66-3 correspond with the court's CM/ECF numbering system.

at 1).

In an email dated November 24, 2010, Chase indicated to Fannie Mae that the payoff sent by State Farm was "short by about 6K . . . ."  (Doc. 55-7 at 96 at CHASE 00414).[8]  Fannie Mae responded on this same date by asking if "the payoff [was] short by $6K when reconciled to the date that the haz[ard] ins[urance] funds were received?"  *Id.*   While the court has been unable to find in the evidentiary record where this particular question was ever directly answered by Chase, it appears that Chase calculated the payoff for Ms. Barnett's loan based upon the later date of November 9, 2010, and not September 3, 2010, the "**RECEIVED**" by "**PAYOFF DEPT.**" date stamped on the bottom of the correspondence from State Farm to Chase dated August 31, 2010, which enclosed the draft of the insurance funds.  (Doc. 66-5 at 1).

On November 29, 2010, of the following week, Chase sent a follow-up email to Fannie Mae indicating that Ms. Barnett was not repairing the home and reiterating that "the funds received do not cover the entire payoff amount of the loan."  (Doc. 55-7 at 94 at CHASE 00412).   In a subsequent email dated December 15, 2010, Fannie Mae advised that it would "not accept any short payoff on this loan."  (Doc. 55-7 at

---

[8]   The page references to Doc. 55-7 correspond with the court's CM/ECF numbering system.

86 at CHASE 00404). Fannie Mae further suggested that Chase ask Ms. Barnett if she would be willing to "consent to a deed in lieu of foreclosure . . . ." *Id.*

By letter dated December 16, 2010, Chase advised Ms. Barnett that "Fannie Mae ha[d] denied [her] request" "to accept the insurance claim funds received in the amount of $301, 608.58 as a settlement for [her] mortgage loan." (Doc. 61-10 at 1).[9] In this same correspondence, Chase informed Ms. Barnett about the deed-in-lieu alternative. AF No. 21.

Ms. Barnett's attorney sent a January 13, 2011, letter to Chase requesting that the insurance proceeds be applied to pay off the loan. AF No. 22. On January 27, 2011, Chase applied the insurance funds to pay off the loan effective September 7, 2010, charging off the shortage amount calculated to be $2,672.67.[10] AF No. 23; (Doc. 66-14 at 1 at CHASE 2452).[11] On January 28, 2011, Lanier Jeffrey ("Ms. Jeffrey") of Chase followed up with correspondence to Ms. Barnett, confirming that

---

[9]   The page references to Doc. 61-10 correspond with the court's CM/ECF numbering system.

[10]   Chase has indicated that it used September 7, 2010, as opposed to September 3, 2010, to calculate the payoff because it was "the date of receipt actually stamped on the check . . . ." (Doc. 68 at 4 ¶¶ 61.-63.).

[11]   The page references to Doc. 66-14 correspond with the court's CM/ECF numbering system.

her loan had been paid "in full on 1/27/2011." (Doc. 61-13 at 1).[12]

Chase recorded a corporate cancellation with respect to Ms. Barnett's loan on February 16, 2011. AF No. 25. No foreclosure sale occurred with respect to the Property or the Mortgage. AF No. 26. After Ms. Barnett made her loan payment in June of 2010, no other money was sent to Chase by or on behalf of Ms. Barnett other than the State Farm insurance proceeds. AF No. 27.

### D.      Facts pertaining to Ms. Barnett's mental anguish claim premised upon her miscarriage.

Ms. Barnett had two miscarriages before her first child was born, in February of 2007 and May of 2008. AF No. 28. Ms. Barnett became pregnant in late November of 2010, and was approximately three weeks pregnant on December 16, 2010. AF No. 29.

Ms. Barnett had a miscarriage on December 18, 2010. AF No. 30. Ms. Barnett became pregnant again on or about December 22, 2010. AF No. 31. Ms. Barnett's pregnancy which began on or about December 22, 2010, was uncomplicated and resulted in the birth of a healthy baby girl in September of 2011. AF No. 32.

---

[12]      The page references to Doc. 61-13 correspond with the court's CM/ECF numbering system.

## III.  STANDARDS

### A.  Summary Judgment

Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R . Civ. P. 56(c).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant.  *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  "Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to 'come forward with specific facts showing that there is a genuine issue for trial.'"  *International Stamp Art, Inc. v. U.S. Postal Service*, 456 F.3d 1270, 1274 (11th Cir. 2006) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

Finally "[i]f the movant bears the burden of proof on an issue, because, as a defendant, it is asserting an affirmative defense, it must establish that there is no genuine issue of material fact as to any element of that defense."  *International Stamp Art, Inc. v. U.S. Postal Service*, 456 F.3d 1270, 1274 (11th Cir. 2006) (citing *Martin v. Alamo Community College Dist.*, 353 F.3d 409, 412 (5th Cir. 2003)).

## B.    Evidentiary Rulings

"All evidentiary decisions are reviewed under an abuse-of-discretion standard." *See, e.g., General Elec. Co. v. Joiner*, 522 U.S. 136, 141 (1997).  "An abuse of discretion can occur where the district court applies the wrong law, follows the wrong procedure, bases its decision on clearly erroneous facts, or commits a clear error in judgment."  *United States v. Estelan*, 156 Fed. App'x 185, 196 (11th Cir. 2005) (citing *United States v. Brown*, 415 F.3d 1257, 1266 (11th Cir. 2005)).

Moreover, as the Eleventh Circuit has made clear, not every incorrect evidentiary ruling constitutes reversible error:

> Auto-Owners' second argument is that it is entitled to a new trial on the basis of what it describes as a number of erroneous evidentiary rulings by the district court.  Evidentiary rulings are also reviewed under an abuse of discretion standard. *Finch v. City of Vernon*, 877 F.2d 1497, 1504 (11th Cir. 1989).  Moreover, even if Auto-Owners can show that certain errors were committed, the errors must have affected "substantial rights" in order to provide the basis for a new trial. *See* Fed. R. Evid. 103(a).  "Error in the admission or exclusion of evidence is harmless if it does not affect the substantial rights of the parties." *Perry*, 734 F.2d at 1446. *See also Allstate Insurance Co. v. James*, 845 F.2d 315, 319 (11th Cir. 1988).

*Haygood v. Auto-Owners Ins. Co.*, 995 F.2d 1512, 1515 (11th Cir. 1993).  Therefore, even the existence of many evidentiary errors does not guarantee an  appealing party relief from an adverse final judgment.  Instead, such erroneous rulings by a district court must "affect the substantial rights of the parties" in order for reversible error to

occur.

## IV.   ANALYSIS

### A.   Uncontested Claims

In her amended response to Chase's Partial Motion, Ms. Barnett "withdraws the following counts, (5) Wrongful Foreclosure, (6) Third-Party Beneficiary Claim, (10) Unjust Enrichment, (11) Violation of TILA, and (12) Violation of RESPA." (Doc. 67 at 24 n.7).[13] Accordingly, Chase's Partial Motion is **GRANTED IN PART**, and counts five, six, ten, eleven, and twelve of Ms. Barnett's complaint are **HEREBY DISMISSED**.

### B.   Contested Claims

The counts upon which Ms. Barnett still opposes the entry of summary judgment are:  count one for fraud; count two for fraudulent suppression; count three for conversion; count four for breach of contract; count seven for negligence; count eight for wantonness, willfulness, recklessness and/or intentional breach of duty; count nine for negligent and/or wanton supervision, retention, training and/or hiring; and count thirteen for libel/slander/defamation.  Ms. Barnett also objects to summary judgment on her mental anguish claim premised upon her miscarriage.  The court

---

[13]   The page references to Doc. 67 correspond with the court's CM/ECF numbering system.

addresses these contested claims below.

### 1.    Fraud and Fraudulent Suppression (Counts One and Two)

A claim of fraud under Alabama law requires proof of:

> 1) a misrepresentation of material fact, 2) made willfully to deceive, recklessly, without knowledge, or mistakenly, 3) which was justifiably relied on by the plaintiff under the circumstances, and 4) which caused damage as a proximate consequence.

*Foremost Ins. Co. v. Barham*, 693 So. 2d 409, 422 (Ala. 1997) (citing Ala. Code 1975, § 6-5-101).  The *prima facie* framework for a fraudulent suppression claim is:

> 1) a duty to disclose the facts, 2) concealment or nondisclosure of material facts by the defendant, 3) inducement of the plaintiff to act, and 4) action by the plaintiff to his injury. *Wilson v. Brown*, 496 So.2d 756 (Ala. 1986).  Silence is not fraud unless an obligation to communicate a material fact exists.  Such an obligation may arise where a confidential relation or "particular circumstances" exist.  Ala. Code 1975, § 6-5-102; *Trio Broadcasters v. Ward*, 495 So. 2d 621 (Ala. 1986).   Under § 6-5-102, the particular circumstances that impose upon a party a duty to speak may arise from the relationship of the parties; the relative knowledge of the parties; the value of the particular fact; and other factors.  *Lowder Realty, Inc. v. Odom*, 495 So.2d 23 (Ala. 1986).

*Foremost*, 693 So. 2d at 423.

Chase maintains that Ms. Barnett has adduced insufficient proof to support the array of fraud claims included in counts one and two of her complaint.  Ms. Barnett generally responds that she has pled these fraud theories in the alterative and specifically limits the scope of her first fraud count:

[Ms. Barnett] is entitled to a trial on the following fraud claims asserted in her complaint.

> (a) That the payoff amount provided to the Plaintiff and her property insurer State Farm was the amount necessary to pay all sums owed by the Plaintiff and secured by the Mortgage;
>
> (b) That these insurance proceeds would be applied to pay off the entire loan balance owed by the Plaintiff; and
>
> (h) That Chase did not know how to apply the insurance funds for the loan payoff even though Chase itself gave State Farm instructions on the amount necessary to pay off the entire loan balance and Chase had already negotiated and deposited the State Farm draft proceeds to or for its own account.

(Doc. 67 at 34).

Ms. Barnett similarly restricts the range of her second fraud count:

[Ms. Barnett] is entitled to a trial on the following fraudulent suppression claims alleged in her complaint.

> (a) That the payoff amount provided by Chase to Plaintiff and State Farm was incorrect and was not the amount necessary to pay off Plaintiff's mortgage loan;
>
> (b) That the "payoff amount" paid and sent by State Farm directly to Chase would not be applied to pay sums secured by the Mortgage but would instead b unlawfully converted by Chase to its own use[.]

(Doc. 67 at 26).

Thus, Ms. Barnett has abandoned recovering against Chase under subparts (c)

through (g) and (i) through (k) of count one and subparts (c) through (f) of count two of her complaint. *See, e.g.*, *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1322 (11th Cir. 2001) (finding claim abandoned when argument not presented in initial response to motion for summary judgment); *Bute v. Schuller Int'l, Inc.,* 998 F. Supp. 1473, 1477 (N.D. Ga. 1998) (finding unaddressed claim abandoned); *see also Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("We decline to exercise our discretion to entertain this argument which was not fairly presented to the district court."); *Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) (failure to brief and argue issue at the district court is sufficient to find the issue has been abandoned); *Hudson v. Norfolk S. Ry. Co.,* 209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001) ("When a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned."); *cf. Road Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler Corp.,* 10 F.3d 1563, 1568 (11th Cir. 1994) (concluding that a district court "could properly treat as abandoned a claim alleged in the complaint but not even raised as a ground for summary judgment"); *McMaster v. United States,* 177 F.3d 936, 940-41 (11th Cir. 1999) (claim may be considered abandoned when district court is presented with no argument concerning a claim included in the plaintiff's complaint).

15

Therefore, the Partial Motion is **GRANTED** with respect to the foregoing fraud claims. (*See also* Doc. 68 at 5 n.6 ("As to her fraud claims (Counts One and Two), Plaintiff offered an argument only in support of the alleged fraudulent statements in Paragraphs 57(a), (b), and (h) and the alleged fraudulent suppressions of fact in Paragraphs 65(a) and (b) of the Complaint.")); *id.* ("Accordingly, Chase is entitled to summary judgment as to the remaining fraud claims: Doc. 1-1 at ¶ 57(c) - (g) and (i) - (k) and ¶ 65(c) - (f).").

Having considered both sides' positions, the court concludes that Chase has carried its burden to assert a failure of evidence necessary for a *prima facie* case, and Ms. Barnett has failed in her resulting obligation to bring to the court's attention evidence in support of, those portions of Counts One and Two asserted in Paragraphs 57 (c) through (g) and (i) through (k) and Paragraphs 65 (c) through (f) of the Complaint. Conversely, the court concludes that material factual disputes preclude the entry of summary judgment in Chases's favor as to the remaining fraud claims which Ms. Barnett is still pursuing. Accordingly, the Partial Motion is **GRANTED** as to subparts (c) - (g) and (i) - (k) of count one and subparts (c) - (f) of count two, and is otherwise **DENIED** as to counts one and two.

## 2.    Conversion (Count Three)

Under Alabama law "[f]our different actions may constitute conversion:  a

16

wrongful taking, a wrongful detention, an illegal assumption of ownership, or an illegal use or misuse." *Tyler v. Equitable Life Assur. Soc. of U.S.*, 512 So. 2d 55, 57 (Ala. 1987) (citing *National Surety Corp. v. Applied Systems, Inc.*, 418 So. 2d 847 (Ala. 1982)).  Only a conversion claim premised upon a wrongful detention "requires proof that the plaintiff demanded the return of the converted property and that the defendant refused that return." *National Surety*, 418 So. 2d at 849 (citing *Raley v. Royal Insurance Co., Ltd.*, 386 So. 2d 742 (Ala. 1980) (Torbert, C.J., concurring specially)).

In support of its Partial Motion, Chase cites to *Jones v. DCH Health Care Authority*, 621 So. 2d 1322, 1324 (Ala. 1993), for the proposition that no type of conversion can lie "because Chase did not acquire the funds by any illegal or wrongful means." (Doc. 54 at 24).  In presenting this argument, Chase overstates the meaning of *Jones* and factually ignores that Ms. Barnett consented to State Farm's sending the insurance proceeds to Chase contingent upon the understanding that Chase would apply them to extinguish her loan.

The full context of the analysis in *Jones* provides:

> It is not clear which of these kinds of conversion the executrix is proceeding under, for DCH was a co-payee of all three of the drafts; and the executrix, after consulting a lawyer, indorsed and delivered these drafts to DCH, without protest.  <u>Likewise, the executrix did not demand the return of these drafts</u>; she merely filed this action.

"In order to constitute conversion, nonconsent to the possession and the disposition of the property by defendant is indispensable." 89 C.J.S. *Trover & Conversion* § 5, p. 535 (1955). DCH showed that the executrix consented to its having possession of the three drafts. This showing was not refuted by the executrix.

"Where the property, the subject-matter of the action of trover, has come into the possession of the defendant by the consent of the plaintiff, and the plaintiff relies on a wrongful detention of the property by defendant to sustain his action, the authorities are agreed that plaintiff has the burden of showing a demand by the plaintiff and a refusal of the defendant to deliver the possession."

*Clay County Abstract Co. v. McKay*, 226 Ala. 394, 397, 147 So. 407, 410 (1933). <u>DCH showed that the executrix made no demand for the return of the drafts</u>. This showing was not refuted by the executrix.

<u>If the plaintiff can show an illegal user or misuser, a demand and refusal is not essential to the right of recovery in conversion.</u> *Clay County Abstract Co. v. McKay, supra.*

*Jones*, 621 So. 2d at 1324 (emphasis added).

Here, in contrast to *Jones*, Ms. Barnett has, consistent with a wrongful detention theory, demonstrated her "nonconsent to the possession and the disposition of the property by [Chase]" subsequent to her prior authorization for Chase to receive the proceeds from the State Farm check. Additionally, Ms. Barnett can pursue a misuser conversion claim without needing to show the additional element of a demand to release the converted property.

Thus, *Jones* does not establish that Chase is entitled to summary judgment, and,

18

in its reply, Chase relies upon no additional authority.  Accordingly, Chase's Partial

Motion on Ms. Barnett's conversion count tied to the wrongful detention or misuse

of the insurance funds is **DENIED**.

### 3.    Breach of Contract (Count Four)

Ms. Barnett's contract claim is connected to Chase's alleged breach of the

Mortgage agreement by "failing and refusing to apply the payoff funds to the

mortgage loan . . . ."  (Doc. 1-1 at 20 ¶ 78).  As the Supreme Court of Alabama has

articulated:

> In the ordinary breach of contract action, the claimant must prove:
> (1) the existence of a valid contract binding the parties in the action, (2)
> his own performance under the contract, (3) the defendant's
> nonperformance, and (4) damages.  *See McGinney v. Jackson*, 575 So.
> 2d 1070, 1071-72 (Ala. 1991); *Seybold v. Magnolia Land Co.*, 376
> So.2d 1083, 1085 (Ala. 1979); *Hanby v. Campbell*, 222 Ala. 420, 421,
> 132 So. 893, 894 (1931).

*Southern Medical Health Systems, Inc. v.  Vaughan*, 669 So.2d 98, 99 (Ala. 1995).

Here, Chase contends that Ms. Barnett is unable to satisfy the second *prima*

*facie* element, *i.e.*, her own performance under the contract.  (*See* Doc. 54 at 25

("Plaintiff cannot establish she met this requirement at the time the insurance funds

were sent to Chase by State Farm because she was admittedly in default on her loan

payments.")).  Chase also argues that the third *prima facie* element is lacking as it

"acted in compliance with the Mortgage by holding the insurance funds pending

written instructions from [Ms. Barnett]." *Id.*

In attempting to persuade this court that it is entitled to summary judgment, Chase cites to only one case within the body of its opening brief:[14] *GE Capital Aviation Servs., Inc. v. Pemco*, 92 So. 3d 749 (Ala. 2012). (Doc. 54 at 25). The court has studied the *Pemco* decision and, other than listing the *prima facie* framework applicable to breach of contract, 92 So. 3d at 763, the opinion lacks any link to Chase's specific contention in this case. For example, factually *Pemco* did not arise in the context of a residential mortgage agreement, but rather "a commercial dispute between . . . corporate entities involving the administration of a detailed multi-million-dollar contract" relating to the aircraft industry. 92 So. 3d at 751.

Second, the Supreme Court of Alabama determined in *Pemco* that the circuit court correctly concluded that the contract claim encompassed triable issues:

> As to the first element, it is undisputed that a valid contract existed. As to the second and third elements, Pemco produced evidence from which the jury could have concluded that Pemco proved its performance under the agreement, GE Capital's nonperformance, and damage to Pemco as a result of the breach. Therefore, <u>the trial court properly submitted Pemco's breach-of-contract claim</u>, based on an

---

[14] Chase's initial brief includes several footnotes, but the referenced authorities unhelpfully stand for only general legal principles pertaining to contract and fraud claims under Alabama law and Chase has made no effort to explain why any of them are factually or legally comparable to the case that is presently before it. (Doc. 54 at 25 n.25; *id.* n.26). Chase's reply brief lacks <u>any</u> case citations concerning breach of contract. (Doc. 68 at 10).

alleged breach of the agreement, to the jury.

*Pemco*, 92 So. 2d at 763.

Thus, *Pemco* does very little to carry Chase's burden as the movant and, on the whole, Chase's position is significantly underdeveloped. As the Eleventh Circuit has described a litigant's duty to suitably frame an issue for judicial review:

> The district court did not consider that argument because it was not fairly presented. <u>Only one sentence in Smith's 116-page petition for a writ of habeas mentioned the possibility of inter-claim cumulative analysis and no authority was cited for it</u>. Smith did not even allude to the argument in his combined 123-page memoranda of law in support of his petition. That is not adequate presentation of the issue. *See United States v. Massey*, 443 F.3d 814, 819 (11th Cir. 2006) (an issue was not adequately presented unless it was raised in a way that the district court could not misunderstand it); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs."); *cf. Flanigan's Enters. Inc. v. Fulton County*, 242 F.3d 976, 987 n. 16 (11th Cir. 2001) (holding that an argument was waived because the appellants "fail[ed] to elaborate or provide any citation of authority in support of" the argument in their brief). <u>Because the issue or argument was not properly presented to the district court, we will not decide it</u>. *See Johnson v. United States*, 340 F.3d 1219, 1228 n. 8 (11th Cir. 2003) ("Arguments not raised in the district court are waived."); *Hurley v. Moore*, 233 F.3d 1295, 1297-98 (11th Cir. 2000); *Nyland v. Moore*, 216 F.3d 1264, 1265 (11th Cir. 2000); *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1511 n. 30 (11th Cir. 1996); *Walker v. Jones*, 10 F.3d 1569, 1572 (11th Cir. 1994).

*Smith v. Secretary, Dept. of Corrections*, 572 F.3d 1327, 1352 (11th Cir. 2009) (emphasis added).

Furthermore, in opposition to the Partial Motion, Ms. Barnett counters:

Chase does not reconcile [its default] argument with its August 27, 2010
letter to April [P.'s Ex. 13] which stated that [Ms. Barnett] could cure
her alleged default by paying Chase $4,577.67 within thirty-two days.
Four days later, Chase received $301,608.58. [Ms. Barnett] more than
cured her alleged default, and the mortgage agreement provides for cure
of *any* default up until foreclosure sale. Chase's argument that a debtor
cannot cure a default by paying *everything* owed on a contract has no
foundation in Alabama law. *See Ala. Code* § 35-10-26 (1988).

Next, Chase argues that the mortgage required the insurance
payment be used to repair the property. Here, Chase cites the wrong
contract provision. The provision Chase cites refers to situations in
which a home is merely damaged and repairs are to be made. In a total
loss where repairs are not "economically feasible" the mortgage
mandates loan payoff.

(Doc. 67 at 30-31 (emphasis in original)); (*see also* Doc. 66-6 at 1 ("**Acceleration
Warning (Notice of Intent to Foreclose)**" from Chase to Ms. Barnett dated Aug. 27,
2010)).[15]  Chase's reply makes only a minimal and inadequate effort to respond to
Ms. Barnett's multiple points. (Doc. 68 at 10).

Accordingly, for all these reasons, the Partial Motion is **DENIED** as to count
four.

### 4.    Negligence and Wantonness (Counts Seven - Nine)

Ms. Barnett's allegations contained in her negligence and wantonness counts
contend that Chase and its employees caused her damages stemming from Chase's

---

[15]  The page references to Doc. 66-6 correspond with the court's CM/ECF
numbering system.

22

capacity as a mortgage loan servicer pursuant to a loan servicing agreement applicable to Ms. Barnett's Note and Mortgage. (Doc. 1-1 at 24-26 ¶¶ 91-102). In its Partial Motion Chase contends that these claims are not cognizable under Alabama law and relies upon *Blake v. Bank of America, N.A.*, 845 F. Supp. 2d 1206 (M.D. Ala. 2012).

In *Blake*, the United States District Court for the Middle District of Alabama addressed the viability of the plaintiff's negligent and wanton mortgage servicing claims in the context of a Rule 12(b)(6) record. 845 F. Supp. 2d at 1208. The court summarized the relevant background to these particular counts:

> Blake's first substantive count alleges negligent mortgage servicing on the part of BAC. The second count claims BAC serviced her mortgage wantonly. She asserts the bank owed her a fiduciary duty to collect and distribute payments properly and to debit and credit her account correctly. And she contends BAC breached this duty by assessing illegal fees and failing to service the mortgage in a commercially reasonable manner. The defendants' response focuses on whether or not Alabama law recognizes a cause of action for negligent or wanton mortgage servicing. They argue that it does not, or, alternatively, that even if Alabama law recognizes such a claim, Blake's complaint failed to state one.

*Blake*, 845 F. Supp. 2d at 1209-10.

In finding both of these tortious mortgage-servicing claims to be appropriately dismissed under Rule 12(b)(6), the district court reasoned:

> Alabama does not recognize a tort-like cause of action for the

23

breach of a duty created by contract.  Indeed, "<u>a negligent failure to perform a contract ... is but a breach of the contract</u>." *Vines v. Crescent Transit Co.*, 264 Ala. 114, 85 So. 2d 436, 440 (1956); *see also Barber v. Business Prods. Ctr.*, 677 So. 2d 223, 228 (Ala.1996) ("a mere failure to perform a contractual obligation is not a tort"); *Am. Dist. Tel. Co. of Ala. v. Roberts & Son*, 219 Ala. 595, 122 So. 837, 840 (1929) (holding plaintiff cannot maintain tort action where alleged negligence consists of failure to perform a contractual obligation). <u>A plaintiff can only sue in tort when a defendant breaches the duty of reasonable care—the duty one owes to another in his day-to-day affairs—when such a breach causes personal injury or property damage</u>. *Vines*, 85 So.2d at 440.

Here, Blake's complaint alleges that BAC, as mortgage servicer, undertook a duty to collect payments and to debit and credit her mortgage account properly. She claims that BAC's failure to perform this obligation led to payments being misapplied and fees being charged to her account.  So these allegations raise the questions: from where did this duty arise? Was it created by a contract? Or does a reasonable person owe a similar duty to another in his or her day-to-day affairs?

<u>The repayment and servicing obligations at issue here stem from the mortgage and promissory note executed by the parties, not from the duty of reasonable care generally owed to members of the public</u>. (*See* Compl. at ¶ 6) ("The action is brought to enforce the *contractual* remedies allowed in the mortgage document." (emphasis added).) Blake attempts to overcome this by claiming that she can sue BAC in tort since she only had an agreement with BANA. But this argument falls flat.

BANA's decision to employ BAC to act as an agent to service Blake's mortgage does not mean that BAC exposed itself to tort liability. This is true even though the Court credits Blake's claim that BAC breached the contract's terms while acting as BANA's agent. Under Alabama law, an agent, like BAC, could only incur tort liability while servicing a mortgage by causing personal injury or property damage as a result of a breach of the duty of reasonable care.  Pure economic loss—which is what Blake claims—does not suffice. *See* Restatement (Second) of Agency § 357 (1958) ("An agent who intentionally or

24

negligently fails to perform duties to his principal is not thereby liable to a person whose economic interests are thereby harmed.").

In sum, <u>because Alabama law does not recognize a cause of action for negligent or wanton mortgage servicing</u>, and since an agent does not incur tort liability for <u>economic harm to a third party</u> that stems from breaching a duty owed to his principal, "no construction of the factual allegations will support the cause of action." *Marshall Cnty.*, 992 F.2d at 1174. Accordingly, the first and second substantive counts are due to be dismissed.

*Blake*, 845 F. Supp. 2d at 1210-11 (footnote omitted) (emphasis by underlining added).

Thus, the court in *Blake*, relying upon general concepts of Alabama common law as articulated by the Supreme Court of Alabama in *Vines* and other cases, found that Alabama law would not recognize a tort claim for negligent or wanton mortgage servicing. Guided by the rationale utilized by the middle district in *Blake* and because the "gravamen of th[ese] counts] [before this court] is not a charge of negligence but [rather] the [alleged] breach of the contract" *Vines*, 85 So. 2d at 439, the Partial Motion is **GRANTED** as to counts seven, eight, and nine of Ms. Barnett's complaint.[16] *See id.* ("The fact that [the applicable contract] was negligently breached

---

[16]   With respect to count nine for negligent and/or wanton supervision, the Partial Motion is additionally **GRANTED** on the basis that its cognizable nature is contingent upon Ms. Barnett's ability to demonstrate actionable negligent or wanton conduct on the part of Chase's agent(s) or employee(s), which here she is unable to do in the context of mortgage-servicing misconduct. *Cf. Stevenson v. Precision Standard, Inc.*, 762 So. 2d 820, 824 (Ala. 1999) (" Stevenson correctly points out that

does not affect the nature of the cause of action.").

### 5.    Libel/Slander/Defamation (Count Thirteen)

Ms. Barnett's thirteenth count maintains that "Chase made false, slanderous and defamatory statements about [Ms. Barnett]" in "reporting] negative credit information to credit agencies . . . with knowledge that said information was incorrect and false for more than nine (9) months." (Doc. 1-1 at 29 ¶ 115). Ms. Barnett additionally asserts that "[such untruthful information was disseminated in a negligent, wanton and/or wilful manner . . . ." (*Id.* ¶ 116).

Chase contends that "[a]ll state law causes of action or related damages or injury to [Ms. Barnett] and her credit allegedly arising from Chase's credit reporting on her home mortgage loan are due to be dismissed because they are preempted by the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*" (Doc. 54 at 9).

Chase acknowledges that the appropriate reach of FCRA preemption is still an open question within the Eleventh Circuit. (Doc. 54 at 13). Chase also points out that the issue of FCRA preemption has not been uniformly addressed among district

---

in *Big B, Inc. v. Cottingham*, 634 So. 2d 999 (Ala.1993), this Court recognized a cause of action for negligent or wanton supervision and training."); *Stevenson*, 762 So. 2d at 824 ("That cause of action, however, was predicated on the underlying tortious conduct of an employee, an assistant manager who at trial admitted wrongdoing.") (emphasis added).

26

courts in Alabama.  (*Compare* Doc. 54 at 15, *with id.* at 15 n.12).

In support of its preemption position, Chase primarily relies upon the Seventh Circuit's decision in *Purcell v. Bank of America*, 659 F.3d 622 (7th Cir. 2011), which reasoning was subsequently adopted by the Second Circuit in *Macpherson v. JPMorgan Chase Bank, N.A.*, 665 F.3d 45 (2d Cir. 2011):

> Moreover, and more importantly, Macpherson's basic premise is false:  the 1996 provision, § 1681t(b)(1)(F), is not in conflict with § 1681h(e), and § 1681h(e) does not insulate state tort actions from preemption.  As the Seventh Circuit recently explained in *Purcell v. Bank of America*, 659 F.3d 622 (7th Cir.2011), "[s]ection 1681h(e) preempts some state claims that could arise out of reports to credit agencies; § 1681t(b)(1)(F) [simply] preempts more of these claims." *Id.* at 625 (emphasis supplied). <u>Put differently, the operative language in § 1681h(e) provides only that the provision does not preempt a certain narrow class of state law claims; it does not prevent the later-enacted § 1681t(b)(1)(F) from accomplishing a more broadly-sweeping preemption</u>. As the *Purcell* court persuasively reasoned:

>> <u>Section 1681h(e) does not create a right to recover for wilfully false reports; it just says that a particular paragraph does not preempt claims of that stripe</u>. Section 1681h(e) was enacted in 1970.  Twenty-six years later, in 1996, Congress added § 1681t(b)(1)(F) to the United States Code.  The same legislation also added § 1681s–2. <u>The extra federal remedy in § 1681s–2 was accompanied by extra preemption in § 1681t(b)(1)(F), in order to implement the new plan under which reporting to credit agencies would be supervised by state and federal administrative agencies rather than judges</u>.  Reading the earlier statute, § 1681h(e), to defeat the later-enacted system in § 1681s–2 and § 1681t(b)(1)(F), would contradict fundamental norms of statutory interpretation.

27

*Id.* We agree.

*Macpherson*, 665 F.3d at 47-48 (emphasis added).[17]  Thus, based upon *Purcell*, the

------

[17]  15 U.S.C. § 1681h(e) provides:

Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report <u>except as to false information furnished with malice or willful intent to injure such consumer</u>.

15 U.S.C. § 1681h(e) (footnote omitted) (emphasis added).

15 U.S.C. § 1681t(b)(1)(F) lists as a general exception to the state savings clause contained in § 1681t(a):

No requirement or prohibition may be imposed under the laws of any State–

(1) with respect to any subject matter regulated under--

(F) section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies, except that this paragraph shall not apply--

(i) with respect to section 54A(a) of chapter 93 of the Massachusetts Annotated Laws (as in effect on September 30,

Second Circuit affirmed the district court's decision to enter judgment in favor of Chase on claims of defamation and intentional infliction of emotional distress premised upon allegations of "willfully and maliciously provid[ing] false information about [the plaintiff's] finances to Equifax, a consumer credit reporting agency." *Macpherson*, 665 F.3d at 46; *see id.* ("Because we agree that the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681t(b)(1)(F), preempts Macpherson's state law claims against Chase, we affirm the district court's judgment.").

In *Purcell*, the Seventh Circuit observed that "the  district court's statute-only reading of § 1681t(b)(1)(F) makes room for at least some state-law suits alleging wilfully or maliciously false credit reports." 659 F.3d at 624.  Ultimately, the Seventh Circuit reversed the district court, found preemption to be applicable to all state law claims (*i.e.*, regardless of any alleged wilfulness or maliciousness) arising out of false reports to credit agencies, and "remanded with instructions to enter judgment for the

---

1996); or

(ii) with respect to section 1785.25(a) of the California Civil Code (as in effect on September 30, 1996); . . . .

15 U.S.C. § 1681t(b)(1)(F).  15 U.S.C. § 1681s-2 sets forth various duties and procedures applicable to persons and entities such as Chase, who furnish information about borrowers.

Bank on all of Purcell's claims, state and federal alike." *Id.* at 626.

Here, Ms. Barnett's thirteenth count is firmly grounded in the false reports allegedly made by Chase about her to credit reporting agencies.  Further, having studied the *Purcell* and *Macpherson* decisions, the court finds them to be persuasive, adopts their preemption analysis, and similarly holds that 15 U.S.C. § 1681t(b)(1)(F) preempts Ms. Barnett from pursuing defamation, libel, or slander claims against Chase that arises out of any false reports made to credit agencies.

Alternatively, to the extent that Ms. Barnett has attempted in her opposition brief to rewrite her defamation, libel, or slander claim to include allegations of false statements made to others beyond solely credit agencies (*see* Doc. 67 at 21 ("Instead, April's claims are based on Chase's misconduct *independent* of any information Chase disclosed to consumer reporting agencies." (emphasis in original)), Ms. Barnett is procedurally forbidden from attempting such a maneuver.

More specifically, as the Eleventh Circuit has explained:

> The FMLA authorizes leave "[i]n order to care for the ... parent, of the employee, if such ... parent has a serious health condition." 29 U.S.C. § 2612(a)(1)(C). Hurlbert's complaint, however, provided no notice whatsoever that he believed he was entitled to leave on this basis. Indeed, the only person in the complaint alleged to have a experienced a serious health condition is Hurlbert.  We have previously held that Rule 8(a)'s liberal pleading standard is inapplicable once discovery has commenced, and that "[a]t the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint

in accordance with Fed. R. Civ. P. 15(a)." *Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) (per curiam). Hurlbert argues that this rule is inapplicable, because his allegations about his mother do not raise a new "claim," and are merely additional facts asserted in support of the interference claim already pled in his complaint. We disagree. The sole basis for entitlement to FMLA leave pled in Hurlbert's interference claim was his alleged serious health condition. *See* 29 U.S.C. § 2612(a)(1)(D). Thus, the subsequent assertion of an additional, separate statutory basis for entitlement to leave (caring for a parent's serious health condition) effects a fundamental change in the nature of Hurlbert's interference claim. *See id.* at § 2612(a)(1)(C). Having proceeded through discovery without amending (or seeking to amend) his complaint to reflect that fundamental change, Hurlbert was not entitled to raise it in the midst of summary judgment. *See Gilmour*, 382 F.3d at 1315 ("A plaintiff may not amend [his] complaint through argument in a brief opposing summary judgment.").

*Hurlbert v. St. Mary's Health Care System, Inc.*, 439 F.3d 1286, 1296-97 (11th Cir. 2006) (emphasis added).

Thus, consistent with the Eleventh Circuit's holding in *Hurlbert*, Ms. Barnett is prohibited from pursuing any too-late-raised modification of her defamation, libel, or slander claim. *See also Flintlock Const. Services, LLC v. Well-Come Holdings, LLC*, 710 F.3d 1221, 1228 (11th Cir.  2013) ("This court's precedent foreclosed Well–Come's attempt to amend its complaint at the summary judgment stage without seeking leave of court pursuant to Rule 15(a)(2).").

Accordingly, the Partial Motion is **GRANTED** as to count thirteen of Ms. Barnett's complaint.

31

### 6.      Ms. Barnett's Miscarriage Mental Anguish Claim

Finally, the parties dispute whether Ms. Barnett may properly seek mental anguish damages stemming from her miscarriage which occurred on December 18, 2010, and which loss she attributes to Chase's mistreatment of her. More specifically, Chase contends that Ms. Barnett cannot seek damages relating to her miscarriage due to a lack of causation evidence. (Doc. 54 at 16-18).

Regarding proof of damages, as explained by the Supreme Court of Alabama in the procedural context of answering a certified question from the United States District Court for the Northern District of Ohio:

> In *Johnson v. Harrison*, 404 So.2d 337, 340 (Ala.1981), this Court stated the general principle regarding which party bears the burden of proving damages:
>
>> "The rule has long been established that the party claiming damages has the burden of establishing <u>the existence of and amount of those damages by competent evidence</u>. *Smith v. Richardson*, 277 Ala. 389, 171 So. 2d 96 (1965). The award of damages cannot be made upon speculation, and the plaintiff has the burden of offering evidence tending to show to the required degree, the amount of damages allegedly suffered. *Great American Insurance Co. v. Railroad Furniture Salvage of Mobile, Inc.*, 276 Ala. 394, 162 So. 2d 488 (1964)."

*Jerkins v. Lincoln Elec. Co.*, 103 So. 3d 1, 10 (Ala. 2011) (emphasis added).

Citing to *Macke v. Sutterer*, 141 So. 651 (Ala. 1932), Ms. Barnett responds that

because the "fear of a miscarriage is a recoverable component of mental anguish[,]" no expert is needed to prove that Chase's misconduct proximately caused her miscarriage.  Having studied the *Macke* decision, the court finds it to be inapposite for several reasons.  The *Macke* opinion involved an appeal of a jury verdict against a landlord on a claim of negligence by the plaintiff who had fallen on some steps and suffered physical injury.  *See id.* at 651 ("This is an action on the case by the tenant against the landlord for personal injury resulting from the breaking or giving away of the steps to the house, causing plaintiff to fall.").

While the plaintiff in *Macke* did assert that her fall caused her to be afraid that she might miscarry, as part of her evidence, she relied, at least in part, upon expert testimony from her treating physician, which tended to establish proximate causation. As the Supreme Court summarized this proof, "[t]he questions to Dr. Cooper, who defendants conceded was qualified as a professional witness, and who had attended the plaintiff professionally, related to matters of professional knowledge, observation, and experience, clearly relevant to the question of damages <u>alleged to have resulted proximately from the injury</u>, and were allowed without error."  141 So. at 652 (emphasis added).  In contrast, Ms. Barnett has offered no corroborating expert medical testimony to support her miscarriage claim.

Additionally, the Supreme Court of Alabama determined in *Macke* that "if the

33

pains of childbirth were enhanced in consequence of the [physical] injuries, this would constitute a proper subject of compensation." 141 So. at 652 (quoting *Nevala v. City of Ironwood*, 205 N. W. 93, 94 (Mich. 1925) (internal quotation marks omitted) (alternation added).   Accordingly, "evidence going to show plaintiff's <u>physical</u> condition before and after the injury up to the trial was properly admitted.") (emphasis added).   *Macke*, 141 So. at 653; *see also id.* at 653 (on rehearing) ("If such fear was the natural consequence of her <u>personal injury resulting proximately from defendants' negligence</u>, it was mental anguish, and therefore an element of actual damages.") (emphasis added).   Here, although Ms. Barnett's miscarriage was tragic, her mental distress claim is unconnected to any underlying physical injury proximately caused by Chase.

Therefore, *Macke* does not convince this court that Ms. Barnett should be permitted to seek mental distress damages related to her miscarriage.   Further, in the absence of Ms. Barnett's citation to any controlling cases in which a jury validly considered miscarriage or fear of a miscarriage as a component of mental anguish in a situation in which the plaintiff offered no proof of physical injury, she has not carried her burden as the proponent of this particular item of damage.   Therefore, Chase's Partial Motion is **GRANTED** in this regard.

Finally, Ms. Barnett's Strike Motion pertains to the parties' disagreement over

this mental damages issue and seeks to strike certain expert reports containing opinions on causation provided by Chase's medical witness, Cornelia Rose Graves, M.D.  Because the court's reasons for granting summary judgment in favor of Chase are unrelated to any consideration of these challenged records and related arguments, the Strike Motion is **TERMED** as **MOOT**.  (*See also* Doc. 68 at 8 n. 12 ("This claim should be dismissed ever before taking into account the opinions of Chase's medical expert, Cornelia Rose Graves, M.D., which are properly before the Court.")).

## V.   CONCLUSION

As ruled above, Chase's Partial Motion is **GRANTED IN PART** and otherwise **DENIED**.  More specifically, the following counts and claims are **HEREBY DISMISSED WITH PREJUDICE**:  (1) subparts (c) through (g) and (i) through (k) of count one; (2) subparts (c) through (f) of count two; (3) counts five through thirteen; and (4) the miscarriage mental damages claim.  Further, the Strike Motion is **TERMED** as **MOOT**.

By separate order, the court will set this case for a pretrial conference.

**DONE** and **ORDERED** this the 26th day of June, 2013.

**VIRGINIA EMERSON HOPKINS**
United States District Judge