FILED
2014 Jan-16  PM 03:25
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

| | |
|---|---|
| **APRIL K. BARNETT,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No.: 1:12-CV-1745-VEH** |
| ) | |
| **JP MORGAN CHASE BANK,** ) | |
| **NATIONAL ASSOCIATION, as** ) | |
| **successor by merger to CHASE** ) | |
| **HOME FINANCE, LLC,** ) | |
| ) | |
| **Defendant.** ) | |

---

## MEMORANDUM OPINION AND ORDER

### I.    Introduction

This case is set for a trial on January 27, 2014, and a pretrial hearing and preliminary charge conference on January 17, 2014. Pending before the court is Defendant JP Morgan Chase Bank National Association's ("Chase") Motion in Limine Under *Daubert* to Exclude Certain Opinions of Plaintiff's Expert Evan D. Hendricks ("Mr. Hendricks") (Doc. 82) (the "*Daubert* Motion") filed on December 27, 2013. Plaintiff April K. Barnett ("Ms. Barnett") opposed the *Daubert* Motion on January 7, 2014. (Doc. 96).

Accordingly, the *Daubert* Motion is now under submission and, for the reasons

explained below, is **GRANTED IN PART** and is otherwise **DENIED**.

## II.   STANDARDS

### A.   Evidentiary Rulings Generally

"All evidentiary decisions are reviewed under an abuse-of-discretion standard."

*See, e.g., General Elec. Co. v. Joiner*, 522 U.S. 136, 141 (1997). "An abuse of

discretion can occur where the district court applies the wrong law, follows the wrong

procedure, bases its decision on clearly erroneous facts, or commits a clear error in

judgment." *United States v. Estelan*, 156 F. App'x 185, 196 (11th Cir. 2005) (citing

*United States v. Brown*, 415 F.3d 1257, 1266 (11th Cir. 2005)).

Moreover, as the Eleventh Circuit has made clear, not every incorrect

evidentiary ruling constitutes reversible error:

> Auto-Owners' second argument is that it is entitled to a new trial
> on the basis of what it describes as a number of erroneous evidentiary
> rulings by the district court. Evidentiary rulings are also reviewed under
> an abuse of discretion standard. *Finch v. City of Vernon*, 877 F.2d 1497,
> 1504 (11th Cir. 1989). Moreover, even if Auto-Owners can show that
> certain errors were committed, the errors must have affected "substantial
> rights" in order to provide the basis for a new trial. *See* Fed. R. Evid.
> 103(a). "Error in the admission or exclusion of evidence is harmless if
> it does not affect the substantial rights of the parties." *Perry*, 734 F.2d
> at 1446. *See also Allstate Insurance Co. v. James*, 845 F.2d 315, 319
> (11th Cir. 1988).

*Haygood v. Auto-Owners Ins. Co.*, 995 F.2d 1512, 1515 (11th Cir. 1993). Therefore,

even the existence of many evidentiary errors does not guarantee the party appealing

2

a new trial. Instead, such erroneous rulings by a district court must "affect the substantial rights of the parties" for reversible error to occur.

### B.     Rulings Regarding Experts Specifically

Rule 702 of the Federal Rules of Evidence allows expert testimony when (1) the witness is qualified as an expert; and (2) his expertise "will assist the trier of fact to understand the evidence or to determine a fact in issue . . . ." Fed. R. Evid. 702. More specifically, Rule 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid 702. Rule 702 must be read in conjunction with three (3) seminal decisions by the Supreme Court of the United States related to expert testimony: *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993); *Joiner, supra*; and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).

Additionally, all rulings on *Daubert* motions are reviewed under an abuse of discretion standard. *See, e.g., Joiner*, 522 U.S. at 141 ("All evidentiary decisions are reviewed under an abuse-of-discretion standard."). "An abuse of discretion can occur

where the district court applies the wrong law, follows the wrong procedure, bases its decision on clearly erroneous facts, or commits a clear error in judgment." *United States v. Estelan*, 156 F. App'x 185, 196 (11th Cir. 2005) (citing *United States v. Brown*, 415 F.3d 1257, 1266 (11th Cir. 2005)).

Concerning the issue of whether to hold a *Daubert* hearing, the Eleventh Circuit has explained:[1]

> In this case, after the government moved to exclude Tressel's testimony, the district court assessed the reliability of his opinions by conducting a thorough *Daubert* hearing in which Tressel was asked, repeatedly, what the bases for his opinions were. While some expert testimony will be so clearly admissible that a district court need not conduct a *Daubert* hearing in every case, *see Kumho Tire*, 526 U.S. at 150-52, 119 S. Ct. at 1175-76, in this case, the district court's decision to evaluate the admissibility of Tressel's opinions in the context of a pre-trial hearing was a perfectly reasonable one. Moreover, Frazier has not attacked the timing or conduct of the *Daubert* hearing. And the record amply establishes that Frazier was afforded every opportunity at the hearing to adduce the foundations of Tressel's challenged opinions. The district court did not abuse its discretion when it conducted a *Daubert* hearing.

*United States v. Frazier*, 387 F.3d 1244, 1264 (11th Cir. 2004). Relatedly, the Eleventh Circuit "also review[s] a trial court's decision on whether to hold a *Daubert* hearing for abuse of discretion." *Cook ex rel. Estate of Tessier v. Sheriff of Monroe* 402 F.3d 1092, 1113 (11th Cir. 2005).

Finally, the burden under Rule 702 rests squarely with the proponent of the

---

[1] No party has requested a *Daubert* hearing in this instance.

expert witness:

> The proponent of the expert testimony carries a substantial burden under Rule 702. "The burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence." *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir.1999) (citing *Daubert*, 509 U.S. at 592 n. 10, 113 S. Ct. 2786). Thus, the proponent must demonstrate that the witness is qualified to testify competently, that his opinions are based on sound methodology, and that his testimony will be helpful to the trier of fact. *See, e.g., Frazier*, 387 F.3d at 1260 ("The burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion...."); *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1257 (11th Cir. 2002); *Maiz*, 253 F.3d at 664.

*See Cook*, 402 F.3d at 1107.

## III.   Rulings

Chase's *Daubert* Motion seeks to preclude Mr. Hendricks from testifying about five separate areas as discussed more fully below.

### A.   Uncontested Portion

The bulk of Chase's *Daubert* Motion contends that Mr. Hendricks should not be allowed to offer an opinion regarding the amount or range of Ms. Barnett's specific damages. On January 6, 2014, Chase filed a notice relating to its *Daubert* Motion which indicates that Ms. Barnett does not intend to call Mr. Hendricks for the purpose of providing a damages calculation. (Doc. 94).

Ms. Barnett has neither opposed this notice nor otherwise contested the merits

of Chase's *Daubert* Motion pertaining to this area. Accordingly, that portion of the *Daubert* Motion is **GRANTED** as unopposed, and Mr. Hendricks is **HEREBY PROHIBITED** from offering any quantitative opinion(s) about the amount of damages allegedly suffered by Ms. Barnett.

**B.     Contested Portions**

As summarized by Chase, the subjects of testimony which Ms. Barnett does still contest are:

> (a) any opinion about Chase's conduct and whether it complied with its own policies or procedures or otherwise made any mistakes in the handling of Plaintiff's mortgage loan and fire insurance proceeds; (b) any opinion regarding, or referring to, the facts of other cases involving Chase and in which Hendricks was a proffered expert; (c) any opinion that the type of credit damages claimed by Plaintiff are "consistent" with damages Hendricks has seen claimed by consumers in other lawsuits, or any similar opinion that seeks to validate or confirm the type of damages claimed by Plaintiff; and (d) any opinion that Plaintiff will be at risk for not answering "no" on future credit applications to questions about whether she had property foreclosed (or any similar opinion).

(Doc. 94 at 2 ¶ 2). The court addresses these and other areas of profered expert testimony (as amplified by Ms. Barnett's opposition) separately below.

**1.     Opinions Chase's Corporate Non-Compliance and Industry Practices**

Mr. Hendricks has offered opinions about Chase's failure to follow its own policies and procedures and specifically maintains that Chase's treatment of Ms.

6

Barnett "reflected serious defects in Defendant's actual practices and grossly inadequate supervision and quality controls." (Doc. 82 at 31-32). Chase preliminarily objects that Mr. Hendricks "has no qualifications to offer expert opinions on loan servicing activities." (Doc. 82 at 32). Chase also contends that such testimony would not assist the trier of fact because a lay person is capable of hearing the evidence and deciding whether Chase violated its own policies in its handling Ms. Barnett's loan. *Id.*

In response, Ms. Barnett maintains that Mr. Hendricks "36 years of experience in the field [of] consumer information, and in the more specialized sub-field of credit reporting . . . ." bestows him with the requisite qualifications to testify about Chase's failure to comply with its own internal loan servicing procedures. (Doc. 96 at 1); *see Frazier*, 387 F.3d at 1260-61 ("While scientific training or education may provide possible means to qualify, experience in a field may offer another path to expert status."); *id.* at 1261 ("The Committee Note to the 2000 Amendments of Rule 702 also explains that '[n]othing in this amendment is intended to suggest that experience alone ... may not provide a sufficient foundation for expert testimony.'" (quoting Fed. R. Evid. 702 advisory committee's note (2000 amends.))).

Consistent with the qualification principles outlined in *Frazier*, the court find that Mr. Hendricks's substantial experience in the fields of consumer information

generally and credit reporting more specifically renders him qualified to testify about Chase's noncompliance with its loan servicing and credit reporting practices and procedures,[2] including his years of accumulated internal data regarding Chase,[3] the way Chase maintains, uses, and discloses information,[4] how that relates to credit reporting on a consumer,[5] and how that impacts on the credit reputation of consumers, like Ms. Barnett.[6]

Relatedly, the court determines that Mr. Hendricks is qualified to testify about industry practices,[7] including how credit reporting agencies function and how they respond to disputes and complaints by consumers.[8] Mr. Hendricks is similarly qualified to testify about the nature and purpose of credit, credit reports, and credit scores.[9]

Additionally, the court concludes that Ms. Barnett has satisfied the helpfulness

---

[2] (Doc. 96 at 19).

[3] (Doc. 96 at 18).

[4] (Doc. 96 at 15).

[5] (Doc. 96 at 15).

[6] (Doc. 96 at 15).

[7] (Doc. 96 at 19).

[8] (Doc. 96 at 12, 13).

[9] (Doc. 96 at 18).

prong of Rule 702. In particular, the court is persuaded that Mr. Hendricks's expert testimony in all these areas will assist the jury and offer "more than what lawyers for the parties can argue in closing arguments." *Frazier*, 387 F.3d at 1262-63.

Accordingly, the corporate compliance section of the *Daubert* Motion is **DENIED**, and Mr. Hendricks is **HEREBY PERMITTED** to offer opinions about Chase's noncompliance with its own policies and procedures in its handling Ms. Barnett's loan and the reporting of her credit with the exception of any negligence-related opinions like those identified in Ms. Barnett's opposition (*i.e.*, Chase's failure to exercise adequate care) because no negligent hiring, training, and/or supervision claim remains in the lawsuit.[10]

### 2.    Opinions On Chase's Conduct in Other Cases

Chase seeks to prohibit Mr. Hendricks from testifying about its alleged mistreatment of other borrowers in other cases on the basis that such evidence "would not assist the trier of fact in understanding or reaching a decision on any of the claims in this case, nor are they relevant to the jury's determinations." (Doc. 82 at 34). Ms. Barnett counters that this evidence is relevant to her fraud claims to show the *prima facie* element of Chase's intent to deceive her and its possible financial motive to misrepresent the status of her loan. This type of expert evidence is also relevant to

---

[10]   (Doc. 96 at 14).

9

establishing Ms. Barnett's breach of contract claim.

Accordingly, the Chase's conduct in other cases section of the *Daubert* Motion is **DENIED**, and Mr. Hendricks is **HEREBY PERMITTED** to offer opinions about Chase's noncompliance with its own policies and procedures in its handling of loans by other borrowers, including in particular its handling of Mrs. Barlow's loan.[11]

### 3. Opinions On Ms. Barnett's Claimed Credit Damages

Chase seeks to preclude Mr. Hendricks from offering opinions about Ms. Barnett's credit damages generally and, more particularly, the stress that its conduct toward her allegedly caused her. Chase raises qualification, helpfulness, and Fed. R. Evid. 403 objections. Ms. Barnett responds that Mr. Hendricks's practical experience renders him qualified to provide these damages-related opinions and that the helpfulness and relevancy of such expert testimony substantially outweighs any prejudicial effects.

To the extent that Mr. Hendricks is attempting to assert that Chase's conduct caused her stress or mental anguish, the *Daubert* Motion is **GRANTED** because Ms. Barnett has not established (and cannot establish) that Mr. Hendricks is qualified to provide a medical opinion as to causation with respect to Ms. Barnett's subjective

---

[11] (*See* Doc. 99 at 6-7 (Ms. Barnett's opposition to Chase's non-*Daubert* Motion in Limine discussing Chase's treatment of another comparable borrower, Mrs. Barlow)).

state of mind, including her lack of well being,[12] sense of helplessness,[13] having a cloud hanging over her life,[14] being in credit jail,[15] being <u>afraid</u> to answer "no" to a question from a potential future lender about delinquencies and foreclosures,[16] types of damages that are common to victims who have suffered mental anguish damage under comparable circumstances as Ms. Barnett,[17] and the like.

The remainder of the *Daubert* Motion relating to this section is **DENIED**. Accordingly, Mr. Hendricks is **HEREBY PERMITTED** to offer opinions on the following objective topics relating to Ms. Barnett's claimed damages, including: (1) the chilling effects of anticipated credit problems which might prevent the consumer from applying for credit in the future because a lender in one way or another will ask about delinquencies and foreclosures and because there are penalties for not answering those questions truthfully,[18] (2) debt collection efforts, such as, calls and

---

[12]   (Doc. 96 at 4).

[13]   (Doc. 96 at 4).

[14]   (Doc. 96 at 4).

[15]   (Doc. 96 at 4).

[16]   (Doc. 96 at 8, 9).

[17]   (Doc. 96 at 19-20).

[18]   (Doc. 96 at 4, 8, 9).

letters,[19] and (3) expended time and energy to correct errors not of one's making.[20]

**4.    Opinions On Ms. Barnett's Answers To Foreclosure Questions On Future Credit Applications**

Finally, Chase seeks to prohibit Mr. Hendricks from testifying about risks associated with Ms. Barnett's answers to foreclosure-related questions on future credit applications.  Chase characterizes this type of evidence as an improper legal opinion. (Doc. 82 at 38). Ms. Barnett retorts that Mr. Hendricks is qualified to render an opinion on this topic due to his vast experience in the field of consumer information and sub-field of credit reporting.

To the extent that Mr. Hendricks seeks to offer an opinion about Ms. Barnett's specific criminal or civil legal exposure when answering foreclosure-related questions on a Uniform Residential Loan Application, this part of the *Daubert* Motion is **GRANTED**.  However, consistent with the rulings above, Mr. Hendricks will be permitted to testify about certain objective credit chilling effects, including why answering such questions might be difficult for Ms. Barnett and generally that there are penalties for not answering those questions truthfully. Therefore, to that extent, this part of the *Daubert* Motion is **DENIED**.

---

[19]    (Doc. 96 at 4).

[20]    (Doc. 96 at 4).

## IV.    Conclusion

Therefore, Chase's *Daubert* Motion is **GRANTED IN PART** and is otherwise

**DENIED**.

**DONE** and **ORDERED** this the 16th day of January, 2014.

**VIRGINIA EMERSON HOPKINS**
United States District Judge